**CITY STORES COMPANY, Plaintiff,**

v.

**SUN INSURANCE COMPANY OF NEW YORK, Defendant.**

**No. 70 Civ. 2876.**

United States District Court, S. D. New York.

Oct. 24, 1972.

**1114**

Darby, Healey, Stonebridge & Whelan, New York City, for plaintiff.

Bigham, Englar, Jones & Houston, New York City, for defendant; Donald F. Connors, George R. Daly, New York City, of counsel.

WYATT, District Judge.

This is a motion by plaintiff (City) for summary judgment in its favor. Fed.R.Civ.P. 56. After this motion was made, defendant (Sun) also moved for summary judgment in its favor.

The action is on an insurance policy entitled "Open Cargo Policy—Marine Only" issued by Sun to City.

Jurisdiction is said to be in this Court because it is "a case of admiralty and maritime jurisdiction" (complaint, para. 1). There is no diversity jurisdiction but defendant apparently concedes that the Court does have jurisdiction and, not without some doubt, it is so assumed. 28 U.S.C. § 1333(1).

City operates a number of retail stores in this country. It buys merchandise in Italy (among other places) and arranges to bring the goods to this country for sale.

The complaint alleges that before July 4, 1969 plaintiff had bought goods at inland factories in Italy and had caused such goods to be shipped to itself from various places in Italy to various places in this country; that Del Bene was a shipping agent in Italy who handled inland freight transportation of goods from inland factories to the port of Leghorn (Livorno) where the goods are exported here; that Del Bene had a warehouse in Livorno; that Del Bene handled the transportation of City's goods from the inland factories to his warehouse in Livorno; that while the goods were in the warehouse they were totally destroyed on July 4, 1969. City alleges that the loss is covered by Sun's policy and asks for damages of $106,601.19.

On this motion, City submits one invoice from a factory in Florence covering goods of the value of $133.81. It is said for City that there are other invoices which in the aggregate amount to the sum demanded in the complaint but the other invoices are not submitted because they would constitute mere repetition. It is said for City that the invoices are 103 in number, that the earliest is

dated March 27, 1969; that three are dated in May, 1969; and that the others are dated June 9, 1969 and later (but, of course, before July 4, 1969).

The facts are not made to appear in any orderly fashion by either side but from the Clerk's file and otherwise the situation can be understood in general and appears to be undisputed.

The goods were bought by agents of City from inland factories in Italy and were paid for.

Del Bene was an "agent" of City "through whom the goods were transported from the various factories to the vessel that would eventually carry said goods" to City in this country (answers for City to interrogatories, p. 2).

Del Bene for plaintiff arranged to take delivery of the goods from the inland factories. The goods were in "packages for export to the United States" (answers for City to interrogatories, p. 3).

According to the practice of City, Del Bene did not open the packages at any time but arranged for their transportation (usually by truck) from the factories to his warehouse in Livorno where they were then "consolidated for shipment" under instructions to Del Bene to "consolidate all packages for early export" to the United States (answers for City to interrogatories, pp. 4, 5). In most instances, the vessel provides Del Bene with containers in which the various packages are consolidated (answers for City to interrogatories, p. 6).

In summary, therefore, Del Bene as agent of City arranged to pick up the goods in suit in various lots and at various factories in inland Italy, arranged to move them (usually by truck) to his warehouse in Livorno, kept them in his warehouse for various periods of time preparing to consolidate them for shipment on one vessel to the United States, and while they were being so kept the goods were destroyed by fire.

The question is whether the loss is covered by the Sun policy.

It must be said at once that the Sun policy is prolix, diffuse, and confused in wording. It is a mystery how business can be conducted with such a verbal mishmash as this policy but apparently the wording is widely used. Sufficient appears, despite the multitude of words, to make it evident that the policy does not cover the loss here.

The policy covers "all lawful shipments of property . . . shipped by or consigned to the Assured . . .". The policy covers "shipments" by "steamers" and "vessels" and "connecting conveyances by land or otherwise . . . .".

The insurance attaches "from the time the goods leave the warehouse . . . for the commencement of the transit and continues until the goods are delivered to the final warehouse at the destination . . . .".

It was a condition of the insurance "that there shall be no interruption or suspension of transit unless due to circumstances beyond the control of the Assured".

There was an endorsement to the policy which extended its coverage to "goods and merchandise . . . while temporarily detained in warehouses approved by [Sun] in writing . . .". The only warehouse so approved was in Florence.

a.

■ The insurance never attached here because there never was a "shipment", there was never a "commencement of the transit", and the goods never left "the warehouse". The inland factories could not be considered a "warehouse" within the meaning of the policy. The inland factories did not ship or consign the goods to City in the United States. No through shipment was ordered when the goods left the inland factories. On the contrary, Del Bene simply collected the various lots of goods at inland factories and brought them to his warehouse in Livorno *in preparation for* a "shipment" from Livorno. At the time the goods were destroyed in the

hands of Del Bene, they were under the control of City. They had not been put in the hands of a common carrier. They had not been shipped or consigned to City.

The situation at bar is to be contrasted with that in Groban v. S. S. Pegu, 331 F.Supp. 883 (S.D.N.Y.1971), affirmed 456 F.2d 685 (2d Cir. 1972). There "the goods left Marampa Mines destined for Groban in the United States" (331 F. Supp. at 886). "The inventory left Marampa Mines crated and labelled for delivery to Groban, at a United States Port. I find that this was a single shipment by SLDC to Groban, with its origin at Marampa Mines and its destination New York . . . . The shipment while at Marampa Mines had been completely segregated and otherwise made ready for *through shipment* to New York and when it left Marampa Mines it left the warehouse there, and was subject to coverage under the policy". (331 F.Supp. at 892–893; emphasis supplied)

The case at bar is much like Hillcrea Export & Import Co. v. Universal Ins. Co., 110 F.Supp. 204 (S.D.N.Y.1953), affirmed 212 F.2d 206 (2d Cir.), cert. denied 348 U.S. 834, 75 S.Ct. 57, 99 L.Ed. 657 (1954). Judge Murphy in the case cited found that the goods had not left "for the commencement of the transit"; he remarked that the "policy contemplated marine cargo insurance for an ocean voyage".

b.

 It also seems clear that, even if a "shipment" had been made from the inland factories in Italy, there was an "interruption or suspension of transit" at Livorno which was *not* "due to circumstances beyond the control of the Assured". Thus, the insurance—assuming it had once attached—was voided because of the condition in the policy.

In the *Groban* case, cited above, there was an interruption in transit but the Court specifically found that the assured was not responsible therefor. "Groban was not responsible for the delay that occurred in Freetown" (331 F.Supp. at 886). "I find further that the considerable delay incurred while the shipment remained on the Freetown pier awaiting loading aboard ship for the next stage of the transit was not due to any fault of Groban and was a delay in the course of transit beyond Groban's control." (331 F.Supp. at 893) In the case at bar, the delay at Livorno was caused by and was for the convenience of City. Transit was thus interrupted by City itself and the coverage was voided, assuming that it had already attached.

c.

The parties did contemplate that goods of City might be "temporarily detained in warehouses" and there was an endorsement for such purpose. The coverage was limited, however, to warehouses approved by Sun and the Del Bene warehouse had not been so approved.

There is no genuine issue as to any material fact and defendant is entitled to a judgment as a matter of law.

So ordered.