**PRINCESS CRUISES CORPORATION, INC., Plaintiff,**

v.

**BAYLY, MARTIN & FAY, INC., et al., Defendants.**

**No. C–70–2268 AJZ.**

United States District Court, N. D. California.

March 11, 1974.

Graham & James, Paul A. Dezurick, San Francisco, Cal., for plaintiff.

Ekdale & Shallenberger, Arch E. Ekdale, San Pedro, Cal., and Derby, Cook, Quinby & Tweedt, Lloyd M. Tweedt, San Francisco, Cal., for defendant Bayly, Martin & Fay, Inc.

Bronson, Bronson & McKinnon, Paul H. Cyril, San Francisco, Cal., for defendant Harry W. Gorst Co., Inc.

Lillick, McHose, Wheat, Adams & Charles, Graydon S. Staring, San Francisco, Cal., for defendants McNiel & Coulson, Ltd., McNiel & Coulson (Overseas) Ltd. and Fenchurch Group Brokers Ltd.

Sedgwick, Detert, Moran & Arnold, H. Scott Conley, Jr., San Francisco, Cal., for defendant Underwriters at Lloyd's of London.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

ZIRPOLI, District Judge.

This action brought pursuant to the court's admiralty jurisdiction and involving six claims allegedly based on pendent jurisdiction, arises out of a delay in delivering a vessel to plaintiff in 1968, and the subsequent refusal of plaintiff's insurer to compensate it for the resulting losses.

According to the complaint, plaintiff, a Panamanian corporation with its principal place of business in Los Angeles, California, chartered a passenger vessel, "Carla C," from an Italian company for delivery to the United States as a cruise ship. Operating through defendant insurance brokers, Bayly, Martin & Fay, Inc.; Harry W. Gorst Co., Inc.; McNiel & Coulson (Overseas) Ltd., McNiel & Coulson Ltd., and their successor in interest, Fenchurch Group Brokers Ltd., plaintiff requested a marine insurance policy to be procured with Underwriters at Lloyd's of London, protecting it against losses due to delay in delivery or non-delivery of the "Carla C."

The vessel was delivered late, and an insurance claim was submitted to Lloyd's of London. Lloyd's refused to pay the claim, alleging no coverage existed. Plaintiff then brought this action. The first cause of action, based on admiralty jurisdiction, alleges each defendant acting as agent and employee of the other defendants is liable as an insurer for the losses insured against.

The remaining six causes of action based on pendent jurisdiction are assert-

ed againt the various broker defendants for wrongful failures to procure the requested insurance. These broker defendants now move to dismiss the action for lack of jurisdiction. They argue that there is no basis in admiralty jurisdiction or pendent jurisdiction for the claims alleged against them.

■■ Despite plaintiff's vigorous argument, there is no real question that the broker defendants are not subject to the court's admiralty jurisdiction. Despite criticism of the distinction, marine insurance policies and the claims that arise directly from them are within admiralty jurisdiction, De Lovio v. Boit, 7 F.Cas. 418 (D.Mass.1815), while contracts and agreements to procure marine insurance are outside admiralty jurisdiction. *See* Marquardt v. French, 53 F. 603 (S.D.N.Y.1893); Home Insurance Co. v. Merchants' Transportation Co., 16 F.2d 372, 373 (9th Cir. 1926); 7A Moore's Federal Practice ¶ .255. There is nothing in the recent United States Supreme Court decision, Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1973), which indicates that this particular distinction has lost any of its validity. Rather than expanding the area of admiralty jurisdiction, *Executive Jet Aviation* imposed additional conditions upon its use in the area of torts on navigable waters.

Plaintiff cannot avoid this longstanding dichotomy by the simple expedient of alleging that each of the defendants was agent for the others, and therefore each is an insurer and subject to admiralty jurisdiction. Plaintiff cites no authority to support this unique approach. As defendants indicate, there are many similar contract claims having some relationship to maritime transactions which nevertheless are not a part of admiralty jurisdiction. *See generally* 1 Benedict on Admiralty § 67 (6th ed. 1940).

Therefore, if the court has jurisdiction over the claims against the broker defendants, it must be under the doc-

trine of pendent jurisdiction. In United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court abandoned the "unnecessarily grudging" approach of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), which restricted pendent jurisdiction to cases where the state and federal claims were virtually identical. In its place the Court substituted a two level approach. Federal courts have the *power* to assert pendent jurisdiction over state claims in a wide range of cases:

> Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim "arising under [the] Constitution, the laws of the United States, and Treaties made, or which shall be made, under their Authority . . .," U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try·them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

383 U.S. at 725, 86 S.Ct. at 1138 (citations and footnotes omitted).

■ However, the court went on to hold that whether judicial power exists does not in itself determine whether the court should exercise that power. Rather, exercise of the power lies within the court's discretion and its exercise is justified by considerations of judicial economy, convenience, and fairness to the parties. *See Gibbs, supra* at 726–727, 86 S.Ct. 1130.

There is little doubt that under the general rules of *Gibbs,* this court has

the power to exercise pendent jurisdiction over the state claims against the brokers in this action. Defendants do not challenge the substantiality of the federal claim. The same set of operative facts—whether or not the insurance was procured and whose responsibility its procurement was—determine both the admiralty and state law claims. Moreover, there is no question but that these are claims which ordinarily would be tried in one proceeding. Plaintiff's loss is the same under either theory, and depending on the ultimate factual proof, either the federal or state defendants could be liable for that loss.

Considerations of convenience and economy also indicate that this is an appropriate case to exercise jurisdiction. The state and federal claims are logically related, and if separate actions were filed the proof would almost totally overlap. All that prevents the state claims from being considered with the federal claim is the largely artificial but longstanding distinction noted above.

However, this is not the simple case presented in *Gibbs.* Assuming there is no real validity to the assertion of jurisdiction over the brokers as agents of the underwriter in count one, the exercise of pendent jurisdiction means that additional defendants will be added to the action that would not be parties under the admiralty claim. In these circumstances, the ninth circuit has consistently held pendent jurisdiction cannot be exercised. Kataoka v. May Department Stores Co., 115 F.2d 521 (9th Cir. 1940); Hymer v. Chai, 407 F.2d 136 (9th Cir. 1969) (both involving pendent plaintiffs).

Recently, however, in Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), the United States Supreme Court cast considerable doubt on the ninth circuit position. Petitioners there filed separate actions against several Alameda County sheriff's officers and the county itself, alleging both federal and state causes of action. The Court first held that the

county was not a proper defendant in the federal law action based on 42 U.S.C. §§ 1983, 1988. *Id.* at 710, 93 S.Ct. 1785. It then went on to consider whether there was jurisdiction to hear the state law claims of vicarious liability against the county under the doctrine of pendent jurisdiction:

As to the question of judicial power, the District Court and Court of Appeals considered themselves bound by the Ninth Circuit's previous decision in Hymer v. Chai, 407 F.2d 136 (1969), wherein the court refused to permit the joinder of a pendent plaintiff. Petitioners vigorously attack the decision in *Hymer* as at odds with this Court's decision in *Gibbs*. It is true that numerous decisions throughout the courts of appeals since *Gibbs* have recognized the existence of judicial power to hear pendent claims involving pendent parties where "the entire action before the court comprises but one constitutional 'case'" as defined in *Gibbs*. *Hymer* stands virtually alone against this post-*Gibbs* trend in the courts of appeals, and significantly *Hymer* was largely based on the Court of Appeals' earlier decision in Kataoka v. May Department Stores Co., 115 F.2d 521 (CA 9 1940), a decision which predated *Gibbs* and the expansion of the concept of pendent jurisdiction beyond the narrow limits set by Hurn v. Oursler, *supra*. Moreover, the exercise of federal jurisdiction over claims against parties as to whom there exists no independent basis for federal jurisdiction finds substantial analogues in the joinder of new parties under the well-established doctrine of ancillary jurisdiction in the context of compulsory counterclaims under Fed.Rules Civ.Proc. 13(a) and 13(h), and in the context of third-party claims under Fed.Rule Civ. Proc. 14(a).

411 U.S. at 713–715, 93 S.Ct. at 1798 (footnotes omitted).

Ultimately, the Court chose to rest its decision on the lower court's discretionary authority not to exercise pendent jurisdiction, assuming *arguendo* that the power to exercise jurisdiction existed.

Besides this expression by the Supreme Court, the vast weight of authority within the circuits is opposed to the ninth circuit position on pendent jurisdiction involving pendent parties. *E. g.,* Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800, 809–811 (2d Cir. 1971) (asserting pendent jurisdiction over a state claim against a defendant not named in the federal admiralty claim). *See also* Jacobson v. Atlantic City Hospital, 392 F.2d 149, 153–155 (3d Cir. 1968); Stone v. Stone, 405 F.2d 94 (4th Cir. 1968); Connecticut General Life Insurance Co. v. Craton, 405 F.2d 41, 48 (5th Cir. 1968); F. C. Stiles Contracting Co. v. Home Insurance Co., 431 F.2d 917, 919–920 (6th Cir. 1970); Schulman v. Huck Finn, Inc., 472 F.2d 864 (8th Cir. 1973). *But see* Wojtas v. Village of Niles, 334 F.2d 797 (7th Cir. 1964), cert. denied, 379 U.S. 964, 85 S. Ct. 655, 13 L.Ed.2d 558 (1965) (decided before *Gibbs*).

The weight of these contrary decisions coupled with the criticism of the ninth circuit's view by the Supreme Court in *Moor* indicate that in an appropriate case pendent jurisdiction may be exercised even when it involves bringing in an additional party defendant.[1] The court concludes this is such a case.

First, plaintiff here is asserting claims against pendent defendants;

1. Nothing in Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 54 (1973), persuades the court that the arguments and principles stated in *Moor* have lost their force. *Zahn* involved questions and interests peculiar to its special context as a class action based on diversity of citizenship, and was decided expressly on the issue of the amount in controversy. Whatever problems of pendent jurisdiction arose there, arose in the context of pendent plaintiffs, an issue which is not present here.

there is no problem of essentially separate actions by separate plaintiffs which troubled the court in *Kataoka* and *Hymer*. Second, the claims brought against the defendants involve closely related issues; the distinctions making the claims pendent have little logical support. Third, the action clearly fits the *Gibbs* model of judicial power to consider the claims, since there is no doubt that this is one constitutional case.

Finally, the court notes that the reasons given in *Moor* for finding a proper discretionary denial of pendent jurisdiction are not present here. In *Moor,* the district court was faced with having to resolve difficult questions of state law without clear authority. Neither party contends that the state law claims against the brokers involve difficult, complex, or unsettled state law issues. Neither is there any substantial likelihood of jury confusion since the admiralty claims are not triable to a jury at all, and no jury has been requested as to any of the claims.

Instead, there is a substantial policy reason for considering the claims in one action. The distinction between marine insurance contracts and agreements to procure marine insurance is not one which is logically supported by an analysis of the traditional components of admiralty jurisdiction. In a particular case, as here, the brokerage agreements are equally connected with and in aid of marine commerce and inextricably intertwined with the "business of the sea." *See* 7A Moore, *supra* at 3028–29.

In conclusion, the court finds that under the rule of United Mine Workers v. Gibbs, *supra,* it has the power and properly should exercise its discretion in asserting pendent jurisdiction over the state law claims against the broker defendants. Accordingly,

It is ordered that defendants' motions to dismiss for lack of jurisdiction are denied.