**PAUL MARSH, INC., Plaintiff,**

v.

**EDWARD A. GOODMAN CO., INC., Federal Insurance Company and Utica Mutual Insurance Company, Defendants.**

**No. 84 Civ. 1493 (GLG).**

United States District Court,
S.D. New York.

June 11, 1985.

**636**

Badiak & Will, New York City (Roman Badiak, New York City, of counsel), for plaintiff.

Lanzone & Kramer, New York City (Myron Martynetz, New York City, of counsel), for defendant Edward A. Goodman Co., Inc.

Bigham Englar Jones & Houston, New York City (Joseph J. Magrath III, New York City, of counsel), for defendant Federal Ins. Co.

Halley & Chalos, New York City (Craig English, New York City, of counsel), for defendant Utica Mut. Ins. Co.

## OPINION

GOETTEL, District Judge:

■ It is one of the sacred commandments of federal jurisprudence that the federal courts must protect their subject matter jurisdiction. Ordinarily, one of the parties is more than willing to point out a jurisdictional defect. But when, as here, the parties remain silent, it is the Court's duty to dismiss the action *sua sponte* if it lacks subject matter jurisdiction. Fed.R. Civ.P. 12(h).

### I. *Background*

Because the pleadings are of the most cursory sort, the facts giving rise to this litigation are somewhat obscure. All that appears is that some years ago the plaintiff, Paul Marsh, Inc., imported a shipment of hog bristles. The plaintiff left the bristles at the Pittston warehouse in Brooklyn, New York, and the bristles remained in storage there for many years. At some point, the parties do not tell us precisely when, defendant Utica Mutual Insurance Company ("Utical Mutual") insured the bristles against all risks of loss during storage at the warehouse. When the Utica Mutual policy expired in late August 1981, the plaintiff approached its insurance broker, defendant Edward A. Goodman Co., Inc. The plaintiff alleges that Edward A. Goodman Co., Inc. was then a general agent for defendant Federal Insurance Company ("Federal Insurance"). On August 28, 1981, the broker issued a binder on a Federal Insurance policy of marine insurance. That policy, which had a warehouse endorsement covering goods when warehoused, took effect on November 1, 1981.

On or about November 22, 1981, the plaintiff learned that Pittston had filed for reorganization under Chapter 11 of the Bankruptcy Code. It immediately gave the

warehouse written instructions to release all of its goods. Although certain goods, including some hog bristles, were released to the plaintiff, 202 cartons of bristles were not delivered. A subsequent search of the warehouse failed to uncover the missing bristles. This suit against the broker and the two insurance companies followed.

Several legal and factual issues present themselves in this case. For example, resolution of this dispute necessitates a determination as to when the loss occurred and which insurance policy, if either, covered the loss. Further, if the plaintiff cannot recover under either policy, an issue arises as to whether the broker can be held responsible.[1] Fascinating as these issues may be, this Court must have jurisdiction before it can address them.

In its complaint, the plaintiff alleged that this is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.[2] The plaintiff rests this contention on the fact that the Utica Mutual and Federal Insurance policies were policies of ocean marine insurance and that, therefore, this is a maritime claim.

Although this contention is highly questionable, the defendants have evinced little concern about the Court's subject matter jurisdiction. One has not denied the plaintiff's jurisdictional allegation; another has denied information or belief sufficient to respond to that claim, and the third has characterized the plaintiff's jurisdictional allegation as a conclusion of law that requires no answer. At a final pretrial conference on April 11, 1985, the Court asked the parties why a loss of this nature constituted a maritime claim. The plaintiff's

counsel responded that the Utica Mutual policy and the policy that should have been issued under the binder were ocean marine type policies and that such policies are the proper subject of suit in the federal courts. The Court pointed out that the goods in question had not traveled the seas in many years and that the warehousing was part of the plaintiff's inventory process. The parties responded by noting that there undoubtedly was a question as to the existence of admiralty jurisdiction. But all of the parties, the defendants included, were happy to leave the matter in the federal courts, since, as admiralty lawyers, they were most comfortable here. Moreover, the parties noted, the action, if dismissed, would simply be recommenced in a state court.[3] Given the cavalier attitude of the parties, the Court is obliged to analyze its subject matter jurisdiction *sua sponte.*

## II. *Discussion*

Section 1333 of Title 28 of the United States Code establishes the admiralty jurisdiction of the federal courts. That section provides, in pertinent part, that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333 (1982).

The boundaries of the admiralty and maritime jurisdiction over contractual disputes, including claims on contracts of insurance, defy easy definition. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961). The fountainhead consideration of the subject

---

1. Another issue is whether the statute of limitations bars the loss, which may have occurred some years ago.

2. Rule 9(h) provides that "[a] pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim." Fed.R.Civ.P. 9(h). Since the parties are not diverse, or at least have not been alleged to be such, the Court does not understand why the

plaintiff included the statement about Rule 9(h) in its pleading.

3. The Court suggested that the parties brief the issue of subject matter jurisdiction. One attorney for Federal Insurance responded to that suggestion. His one-page letter stated that the Court lacked jurisdiction over the suit against the broker. He also conceded that there was some question as to the Court's jurisdiction over the plaintiff's other claims.

638

was Justice Story's opinion in *DeLovio v. Boit*, 7 F.Cas. 418 (C.C.D.Mass.1815) (No. 3,776). The admiralty and maritime jurisdiction, Justice Story wrote, comprehended all maritime contracts "which relate to the navigation, business or commerce of the sea." *Id.* at 444.[4] In *New Jersey Steam Navigation Co. v. Merchant's Bank*, 47 U.S. (6 How.) 344, 391, 12 L.Ed. 465, 486 (1848), the Supreme Court adopted Justice Story's formulation. The Court also held that the admiralty jurisdiction encompassed contracts "to be performed upon the sea, or upon waters within the ebb and flow of the tide." *Id.* Three years later, the Court extended the admiralty jurisdiction to include all navigable waters. *The Propeller Genesee Chief v. Fitzhugh*, 53 U.S. (12 How.) 443, 13 L.Ed. 1058 (1851). *People's Ferry Co. v. Beers*, 61 U.S. (20 How.) 393, 15 L.Ed. 961 (1857), summarized the Supreme Court's collected learning on the scope of the admiralty jurisdiction over maritime contracts. It was there stated, "The admiralty jurisdiction, in cases of contract, depends primarily upon the nature of the contract, and is limited to contracts, claims, and services, purely maritime, and touching rights and duties appertaining to commerce and navigation." *Id.* at 401, 15 L.Ed. at 964. To this day, it remains difficult to trace the contours of the admiralty jurisdiction over maritime contracts.

 Despite the dearth of generalized guidance, the precedents are helpful in a variety of specific cases. These precedents aid the Court in easily disposing of several aspects of this action. According to Professor Black, "[T]he contracts involved tend to fall into a not-too-great number of stereotypes, the proper placing of which can be learned, like irregular verbs, and errors in grammar thus avoided." C. Black, *Admiralty Jurisdiction: Critique*

*and Suggestions*, 50 Colum.L.Rev. 259, 264 (1950). For example, *Delovio v. Boit, supra*, established that marine insurance policies are maritime contracts that may subject a party to the admiralty jurisdiction of a federal court. 7 F.Cas. at 444. Other cases definitively establish that an action on a contract or agreement to *obtain* marine insurance is not a maritime claim within the admiralty jurisdiction of the federal courts. *F.S. Royster Guano Co. v. W.E. Hedger Co.*, 48 F.2d 86, 87 (2d Cir.), *cert. denied*, 283 U.S. 858, 51 S.Ct. 651, 75 L.Ed. 1464 (1931).[5] This rule forecloses suit against the broker, Edward A. Goodman Co., Inc., whose only connection with the action was arranging the plaintiff's purchase of a marine insurance policy. Another steadfast rule of admiralty jurisdiction forecloses the exercise of such jurisdiction in an action to reform a policy of marine insurance. *Williams v. Providence Washington Insurance Co.*, 56 Fed. 159 (S.D.N.Y.1893).[6] Although this jurisdictional limitation has been criticized, J. Moore, 7A *Moore's Federal Practice* ¶ .255[2] at 3027, n. 4 ("[The *Providence Washington*] decision seems erroneous insofar as it provides that an action to reform is not upon the policy itself."), it is clearly the law. Consequently, to the extent that the plaintiff demands a reformation of the Federal Insurance binder or insurance contract, this action is outside of the maritime jurisdiction of this Court.

The remainder of this action falls within that area of the maritime jurisdiction that defies strict definition or rigid rules. Simply put, the issue is whether a claim on a contract of marine insurance carrying a warehouse endorsement can be the subject of a federal action when any damage, for which recovery is sought, occurred long

---

4. *Delovio v. Boit* rejected the English rule that emphasized the location of the making of the contract.

5. The courts reason that a contract to procure insurance is preliminary to the maritime contract, which is the insurance contract. J. Moore, 7A *Moore's Federal Practice* ¶ .255(2) at 3027 (2d ed. 1983).

6. The rule rests on the longstanding principle that, although admiralty courts determine cases upon equitable principles, they do not grant equitable relief. 7A *Moore's Federal Practice, supra*, ¶ .255[2] at 3027 n. 4.

after the completion of the transport of the goods. The law is unsettled on most issues that resemble this one. Thus, whether a contract of marine insurance covering a vessel that is no longer engaged in commerce or navigation is within the admiralty jurisdiction is an open question. 7A *Moore's Federal Practice, supra,* ¶ .255[1] at 3022.[7] The law is also unsettled as to "whether quasi-contract claims based on maritime transactions or occurrences wholly unrelated to an underlying maritime contract ... can be enforced in a federal district court." C. Wright, A. Miller & E. Cooper, 14 *Federal Practice and Procedure* § 3675 at 488 (2d ed. 1985).

This Court's necessarily limited research, has failed to unearth any admiralty case involving a claim for a warehouse loss that occurred long after the ocean transport of the lost goods.[8] However, one analagous case from this district provides some much needed guidance. In that case, *Hillcrea Export & Import Co. v. Universal Insurance Co.,* 110 F.Supp. 204 (S.D.N.Y.1953), *aff'd,* 212 F.2d 206 (2d Cir.), *cert. denied,* 348 U.S. 834, 75 S.Ct. 57, 99 L.Ed. 657 (1954), the plaintiff sought to recover on a policy of marine cargo insurance covering the transport of government war surplus goods from the Aleutian Islands to the continental United States. After the plaintiff signed a contract to purchase the goods, the government moved them from storage to a structure located at the water's edge. When moved, the plaintiff's property had not been segregated, banded for shipment, or otherwise made ready for transport by sea. The goods remained in that state until they were destroyed by fire.

The plaintiff sued on a policy of marine cargo insurance issued by the defendant. The policy contained a "warehouse to warehouse" clause extending coverage to risks prior to loading and after unloading. The issue was not whether federal jurisdiction was present but whether the marine insurance policy covered the loss. The court's findings are, nevertheless, instructive. The court determined that the policy contemplated marine cargo insurance for an ocean voyage. It also noted that, at the time of the fire, the goods were still within the seller's control. The ship that was to deliver the goods to the plaintiff had not yet arrived nor had the goods been segregated, sorted, or banded for delivery to the plaintiff. Taking stock of all of these factors, the court determined that, at the time of the fire, the plaintiff's cargo was not subject to the insurance contract. Notwithstanding the "warehouse-to-warehouse" clause, the court made a factual finding that the goods insured had not commenced their transit contemplated by the policy of ocean marine insurance. *See also City Stores Co. v. Sun Insurance Co.,* 357 F.Supp. 1113 (S.D.N.Y.1972), *aff'd,* 475 F.2d 1393 (2d Cir.1973) (policy of marine cargo insurance did not cover goods destroyed before reaching warehouse from which they would be shipped to the United States).

█ Similar reasoning leads this Court to conclude that it lacks subject matter jurisdiction over the remaining claims against Utica Mutual and Federal Insurance. Once the hog bristles arrived in the United States, were moved inland, and placed with the plaintiff's general inventory of bristles, they became a simple inventory item in a warehouse. The bristles were then no longer a part of a marine shipment. Regardless of whether they were still covered by the Utica Mutual policy, a policy insuring ocean transport as well as storage, the existence of such coverage would not subject Utica Mutual to this Court's admiralty jurisdiction. Subject

---

7. Moore has urged that contracts of marine insurance unrelated to commerce or navigation should be "beyond the jurisdiction of the admiralty...." 7A *Moore's Federal Practice, supra,* ¶ .255[1] at 3024.

8. Counsel in an analagous case "failed to call attention to a single case even remotely in point." *Hillcrea Export & Import Co. v. Universal Insurance Co.,* 110 F.Supp. 204, 207 (S.D.N.Y. 1952), *aff'd,* 212 F.2d 206 (2d Cir.), *cert. denied,* 348 U.S. 834, 75 S.Ct. 57, 99 L.Ed. 657 (1953) (discussed *infra* at pp. 639–640).

matter jurisdiction is also wanting as to the claim against Federal Insurance. The rider to the Federal Insurance policy that extended that policy to cover warehouse losses, at least as to this loss, concerned property that had long since ceased to be marine cargo. This warehouse endorsement cannot be fairly characterized as a marine insurance policy that would subject an insurer to this Court's admiralty jurisdiction.

The primary rationale for the existence of admiralty jurisdiction is the national interest in unified judicial supervision of the maritime industry. In the words of Professor Black,

> The main thing is that if the court of admiralty is to exist at all, it should exist because the business of river, lake, and ocean shipping calls for supervision by a tribunal enjoying a particular expertness in regard to the more complicated concerns of that business. If the federal government maintains such a court, it must be because the providing of such a tribunal, and the seeing it function, is a federal concern.

C. Black, *Admiralty Jurisdiction: Critique and Suggestions, supra,* at 280. The claims before this Court bear only the most attenuated relationship to this federal concern. To entertain these claims would be to subvert the purposes underlying our admiralty and maritime jurisdiction.

### III. *Conclusion*

Since the Court lacks subject matter jurisdiction to hear any and all aspects of this case, the action is dismissed.

SO ORDERED.