**CONTINENTAL CAMERAS CO., INC. and Metropolitan Bank & Trust Co., Plaintiffs,**

v.

**FOA & SON CORPORATION, Defendant.**

No. 86 Civ 6985 (LBS).

United States District Court, S.D. New York.

April 29, 1987.

Ben-Veniste & Shernoff, Washington, D.C., Thomas J. Fitzpatrick, New York City (Peter D. Isakoff, Washington, D.C., of counsel), for plaintiffs.

Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y. (Howard J. Newman, Frank J. Giliberti, of counsel), for defendant.

SAND, District Judge.

Defendant FOA & Son Corporation ("FOA") moves to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the Court lacks subject matter jurisdiction. The motion, which arises from a dispute between an insured party and its insurance broker, requires an analysis of the somewhat blurred contours of admiralty jurisdiction. For the reasons explained, the motion to dismiss is granted.

### Background

The present action was filed on behalf of Continental Cameras Co., Inc. ("Continen-

tal") and one of its secured creditors, Metropolitan Bank & Trust Co. ("Metropolitan"), against FOA, which at relevant times was Continental's insurance broker. It appears that FOA, on behalf of Continental, had procured an ocean marine cargo policy with St. Paul Fire & Marine Insurance Co. ("St. Paul") which became effective December 21, 1983 (the "Policy"). The Policy, which included insurance on inventory stored in certain domestic warehouses, was subject to cancellation upon notice by any party. In mid-December 1984, St. Paul's representative advised FOA that there were certain overdue premiums on the Policy and that the Policy would be cancelled unless the premiums were received by December 21, 1984. Continental alleges that prior to that date it paid FOA the premiums due and that FOA deposited the Continental premium check in FOA's account. FOA failed, Continental claims, to forward the insurance premiums to St. Paul prior to the December 21, 1984 deadline.

On December 27, 1984, it appears that St. Paul's representative advised FOA that Continental's Policy would be cancelled effective January 7, 1985. A notice of cancellation to that effect was sent to FOA. Continental alleges, *inter alia*, that FOA negligently failed to advise Continental of the cancellation and to procure alternative insurance coverage. Complaint ¶ 11.

Subsequently, a fire ensued in a New Jersey warehouse in which goods which had been covered by the cancelled Policy were destroyed. Continental and Metropolitan filed suit in federal court, asserting admiralty jurisdiction, to recover from FOA the damages sustained as a result of the fire.

### Discussion

FOA argues that Continental has not sustained its burden of demonstrating that the complaint states a claim that is within the admiralty jurisdiction of a federal court. We agree.

Continental, attempting to invoke admiralty jurisdiction, seeks to rely on the principle that a contract for marine insurance is maritime. *See CTI–Container Leasing v.*

*Oceanic Operations*, 682 F.2d 377, 380 n. 4 (2d Cir.1980). Specifically, Continental claims that FOA was obligated under the Policy to perform certain tasks for Continental. Complaint ¶ 7. Therefore, according to Continental, the suit against FOA arises under the Policy and is an admiralty action.

FOA contends, *inter alia*, that it was not a party to the insurance contract between St. Paul and Continental and that its work in connection with the Continental—St. Paul transaction was solely as an agent for Continental in the procurement of insurance. FOA argues that since it is not a party bound under the Policy, a suit against it cannot be based on the Policy and, thus, invocation of admiralty jurisdiction on the grounds that the suit is one on a marine insurance policy is improper.

■ It has been widely recognized that "[n]either the Constitution nor applicable statutes lay down the criteria for drawing the boundary between maritime and non-maritime jurisdiction." *Peralta Shipping Corp. v. Smith & Johnson (Shipping)*, 739 F.2d 798, 800 (2d Cir.1984). The "broad guiding principles have proven difficult to apply." *Peralta*, 739 F.2d at 801. To achieve a consistent and predictable body of law, courts have accorded "special deference" to precedent even though the justification for such deference sometimes lies less in logic than in the need for clear lines of demarcation. *Peralta*, 739 F.2d at 801.

In the Court's view, FOA never became a party to the marine insurance contract which St. Paul issued to Continental. It appears true, as Continental points out, that FOA executed Policy binders and served as Continental's designated recipient of Policy notices. The printed form contract contains at paragraph 49 a "Brokers Clause," which refers to the fact that there is an "intermediary" broker who "shall be deemed to be exclusively the agents of the Assured and not of the Company." Paragraph 49 further states that "[a]ny notice given or mailed by or on behalf of the Company to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to

have been delivered to the Assured." The fact that the Policy contains an agreement between St. Paul and Continental that notice to a broker-intermediary is deemed notice to Continental does not make the broker a party to the contract. Rather, reference to the principal/agency relationship between Continental and FOA operates to establish certain of the rules of the relationship between Continental and St. Paul.

■ As the agent for Continental in the procurement of the Policy, FOA acted on behalf of a disclosed principal. An agent which makes a contract for a disclosed principal does not become a party to the contract. *Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 860 (2d Cir. 1985). Thus, while Continental may well have a valid claim against FOA, the claim does not arise under the Policy. Continental's argument that the Policy envisions that an "intermediary" would transmit notices to Continental does not change the conclusion. Continental may be correct in asserting that FOA had such an obligation; nevertheless, the obligation does not flow from the Policy but from the relationship among the parties with respect to the Policy.

The conclusion that FOA is not a party to the insurance contract renders inapplicable the principle that contracts for marine insurance are maritime.[1] We turn, then, to whether an action which arises from a principal/agency relationship between a shipper and its insurance broker is one which falls within our admiralty jurisdiction on grounds other than those already discussed.

■ We noted earlier that "special deference" is to be accorded to prior rulings of federal courts on admiralty jurisdiction questions. Established admiralty case law holds that a "general agency" agreement that calls for "husbanding" a vessel is outside the scope of admiralty jurisdiction.

*P.D. Marchessini & Co. v. Pacific Marine Corp.,* 227 F.Supp. 17 (S.D.N.Y.1964); *see also* 7A J. Moore, *Moore's Federal Practice,* ¶ .250 at 3001 n. 1 (2d ed. 1983) (majority rule that agency contracts not maritime contracts) (collecting cases); Gilmore & Black, *The Law of Admiralty* 28 (2d ed. 1975). Even where the husbanding agent supervises the performance of maritime contracts involving maritime services which are considered "necessary for the continuing voyage," the Second Circuit holds that the contract between the principal and the agent is outside admiralty. *Peralta,* 739 F.2d at 803–04. Despite the fact that the "general agency relationship is intimately related with the shipping industry," the prevailing rule is that disputes arising from such a relationship are not cognizable in admiralty. *Peralta,* 739 F.2d at 804. This rule has been criticized, and perhaps rightly so. Black, *Admiralty Jurisdiction: Critique and Suggestions,* 50 Colum.Law Rev. 259, 274–77 (1950); *see also Peralta,* 739 F.2d at 804. Nevertheless, it would be anomalous to hold that a general agency agreement is outside admiralty, while an agreement between a principal and an insurance broker who has procured an insurance policy for the principal falls within the grant of jurisdiction.

■ Further support for our analysis lies in the case law which holds that contracts to procure marine insurance are not within the admiralty jurisdiction of a federal court. *See, e.g., Paul Marsh, Inc. v. Edward A. Goodman Co., Inc.,* 612 F.Supp. 635 (S.D.N.Y.1985). The present case—connected as it is to the cancellation of one insurance policy and the failure to procure alternative coverage—bears some relationship to this precedent.

In *Paul Marsh,* the plaintiff had stored a shipment of hog bristles in a warehouse. The bristles were insured under a policy procured by plaintiff's insurance broker. When the policy expired, the broker issued

1. We need not reach FOA's argument that the underlying loss, which would have been covered by the Policy's warehouse endorsement had the Policy remained in effect, is not maritime in nature. *See* Memorandum of Law in Support of Motion to Dismiss at 9.

a binder on a second policy. Coverage under the second policy, however, did not take effect until approximately 60 days after the issuance of the binder. In this interim period, the plaintiff sustained a loss. It then sued the broker as well as the insurer, seeking to invoke admiralty jurisdiction.

Judge Goettel, raising the jurisdictional issue *sua sponte,* held that the rule that "an action on an agreement to *obtain* marine insurance is not a maritime claim … forecloses suit against the broker, whose only connection with the action was arranging the plaintiff's purchase of a marine insurance policy." *Paul Marsh,* 612 F.Supp. at 638 (emphasis in original). We recognize that *Paul Marsh* may be an imperfect analogy because it appears that the plaintiff there did not allege that the broker had failed to carry out its duties in connection with the original policy before it lapsed. Notwithstanding this difference, the principles discussed in *Paul Marsh* apply here. A significant element of Continental's claim against FOA arises from the contention that, although FOA had received a cancellation notice, it did not inform Continental of this fact "nor … take any steps to secure alternative coverage." Complaint ¶ 11. The claim is thus intimately tied to the alleged failure to procure substitute insurance.

### Conclusion

The guiding principles lead the Court to the conclusion that plaintiff's claim is not cognizable in admiralty. Inasmuch as FOA was not a party to the Policy, jurisdiction cannot be predicated on the principle that marine insurance contracts are maritime. In addition, given the established rule that general agency relationships are considered non-maritime and the case law which holds that an agreement to procure an insurance policy is not a maritime matter, the Court concludes that it would be unwise to widen the currently understood scope of admiralty jurisdiction and allow plaintiff's claim to proceed in admiralty.

Complaint dismissed.
SO ORDERED.