INVERSIONES CALMER, S.A. and
Arosa Mercantil, S.A., Plaintiffs,

v.

C.E. HEATH & CO., and its subsidiaries, C.E. Heath & Co. (Latin America) Limited; C.E. Heath & Co. (Marine) Limited; C.E. Heath & Co. (N. America) Limited; Orlando Gonzalez d/b/a Orlando Gonzalez Reinsurance; Lloyd's Register of Shipping, Defendants.

Civ. No. 83–1969 (JP).

United States District Court,
Puerto Rico.

Jan. 20, 1988.

---

Calderón, Rosa–Silva & Vargas, Hato Rey, P.R., and José E. Alfaro Delgado, Calvesbert & Brown, San Juan, P.R., for plaintiffs.

Fernando Pérez Colón, Lespier, Munoz–Noya & Ramírez, San Juan, P.R., for C.E. Heath & Co., C.E. Heath & Co. (Latin America) C.E. Heath & Co., (North America); and C.E. Heath & Co. (Marine).

Gustavo A. Gelpí, Feldstein, Gelpí & Hernández, San Juan, P.R., (Murray A. Gordon, of-counsel), Gordon, Shechtman & Gordon, P.C., New York City, for Lloyd's Register of Shipping.

José M. Castro Alvarez, Puerto Nuevo, P.R., (José A. Axtmayer, of-counsel), Hato Rey, P.R., for Orlando Gonzalez, d/b/a Orlando Gonzalez Reinsurance.

## OPINION AND ORDER

PIERAS, District Judge.

On January 19, 1977, the motor vessel UKOLA sank in a hurricane in the Gulf of Mexico. Twenty of the twenty-three crew members died, and the 5,000–ton sugar cargo was lost with the vessel. Litigation has been protracted, with a multi-district panel in Florida concluding its efforts in 1984. *See In re Sinking of M/V UKOLA*, 806 F.2d 1 (1st Cir.1986). This case, which concerns apparent underinsurance of the vessel, was filed in 1983 by the owner (Arosa) and the charterer (Calmer) of the UKOLA. The complaint alleged negligence on the part of an insurance broker in Puerto Rico (González), an insurance broker in London (Heath), and a classification society that was hired to inspect and classify the UKOLA (Lloyd's).[1]

According to the complaint, González "was negligent" in his attempts to place

---

1. At least three companies that have had some relationship with the events in the case are not part of the action: El Fenix is a Mexican insurance company that carried the primary insurance on the UKOLA at the time of the sinking; Manufacturers Trust Company is a Puerto Rican insurance company that originally carried primary insurance on the UKOLA; and Oceanus Mutual Underwriting Association carried Protection and Indemnity re-insurance at the time of the sinking.

re-insurance with Heath, thereby breaching "good faith and contract," with the result that the UKOLA did not have proper insurance coverage; Heath willfully and wantonly violated its duty to conduct its business with the utmost of good faith, with the result that the UKOLA's insurance coverage was reduced and that the plaintiffs incurred substantial additional legal costs; and Lloyd's Register "was negligent" in advising the insurance underwriters that the UKOLA was not "in class."

The complaint based federal jurisdiction on this Court's admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and alternatively, on its diversity jurisdiction, 28 U.S.C. § 1332. After extensive discovery and much effort by all parties with respect to these jurisdictional allegations, the plaintiff withdrew diversity as a basis for jurisdiction in a Memorandum Relative to Jurisdictional Allegations filed on April 29, 1985. Thus, if this Court has jurisdiction it is because the case is properly considered to be maritime.

An array of affirmative defenses has been raised by the defendants, including forum non conveniens, lack of personal jurisdiction, statute of limitations, laches, failure to join an indispensable party, and failure to state a claim upon which relief can be granted. Because we reach the conclusion that there is no proper maritime claim with respect to any defendant, we do not address the affirmative defenses and dismiss the complaint.

### Marine Insurance Contracts

Principles of maritime jurisdiction differ with varying causes of action. For torts and criminal acts, we conduct a primarily spatial analysis: the tort or crime must occur on navigable waters and have some maritime nexus. For contracts, the boundaries of admiralty jurisdiction are conceptual rather than spatial, and they are difficult to draw. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 889–90, 6 L.Ed.2d 56 (1961). The focus of the jurisdictional inquiry regarding contracts is the relationship between the subject matter of the contract and the concerns of the maritime industry. *Peralta Shipping Corp. v. Smith & Johnson Corp.*, 739 F.2d 798 (2d Cir.1984). If the contract relates to maritime service or maritime transactions, then there is maritime jurisdiction. *Kossick*, 365 U.S. at 736, 81 S.Ct. at 890–91; *North Pacific S.S. Co. v. Hall Brothers Marine Ry. & Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 222–23; 63 L.Ed. 510 (1919).

Contracts of marine insurance have long been deemed maritime contracts; but not all insurance controversies with maritime connections relate sufficiently to "the navigation, business or commerce of the sea," *DeLovio v. Boit*, 2 Gall. 398, 7 F.Cas. 425, 444 (C.C.D.Mass.1815), to warrant the invocation of maritime jurisdiction. Thus disputes over procurement of marine insurance do not fall under maritime jurisdiction, *Warner v. The Bear*, 130 F.Supp. 549 (D.C.Alaska 1955), although disputes regarding the interpretation or enforcement of insurance contracts do. *See e.g., Insurance Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 20 L.Ed. 90 (1871); *Wilburn Boat Co. v. Firemen's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). Likewise, there is no maritime jurisdiction over actions to reform a policy of marine insurance, *Paul Marsh, Inc. v. Edward A. Goodman Co., Inc.*, 612 F.Supp. 635 (S.D. N.Y.1985); nor over actions for fraud or deceit with respect to insurance. J. Moore, 7A Moore's Federal Practice, ¶ .255[2], p. 3027 (1983), *citing St. Paul Fire & Marine Insurance Co. v. Petroleum Navigation Co.*, 35 F.Supp. 350 (W.D.Wash.1940). Our task is to examine the contracts sued upon to determine which are maritime.

From our summary of the complaint, above, it is evident that the plaintiff conceived of this case as an action in tort. The complaint alleges acts of negligence and breaches of duty, and it makes only veiled references to contractual obligations among the parties. In subsequent submissions, the plaintiff altered its attack, saying its "cause of action is based primarily in contract and quasi-contract."[2] Record

2. Although plaintiff terms the alternative claim one of "quasi-contract," the allegations concern

Document 49, p. 2. This change in theory appears doubly necessary. First, as defendants noted, if the plaintiff were suing in tort, its claims would likely be time barred. The tort statute of limitations in Puerto Rico is one year, and in England it is six years. This action was filed more than six years after the actions complained of, and the complaint would be barred by either laches or the statute of limitations. Second, if the plaintiff were suing in tort, there would obviously be no maritime jurisdiction because the acts complained of were not committed upon navigable waters. *See The Admiral Peoples,* 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935). For the action to survive, it had to be characterized as a maritime contract.

### The Contract with González

█ The gravamen of the revised cause of action against González is said obviously to center on González' "unauthorized *alteration* of a contract of marine insurance *in force.*" Record Document 49, p. 5 (emphasis in original). The relationship among the plaintiff, González, Heath, and several insurance companies not a part of this action, is much disputed. Plaintiffs have at times claimed that defendant González was a primary insurance broker for Calmer and Arosa. *Id.* at 2. Record Document 83, p. 24. At other times, the plaintiffs claimed that González was only "in charge of reinsurance." Record Document 22, p. 3. The distinction is not important for this inquiry.

González was authorized by the plaintiffs to obtain some sort of hull insurance and protection & indemnity insurance for the UKOLA. As such, González was an agent of the plaintiffs,[3] and he may have had an obligation under Puerto Rican law properly to procure the insurance requested. *Cf. Sea Fever Corp. v. Hartford Fire Insur-*

*ance Co.,* 1983 A.M.C. 1276 (D.Mass.1982). *See* 31 L.P.R.A. §§ 4441, 4449 (1968).[4]

If a duty existed, it was based on the implied contract between the plaintiffs and González, not on the insurance agreement itself. No party disputes that González' position was insurance broker, not insurance underwriter. He was not a party to the contracts of insurance and had no power to alter the insurance contracts between the plaintiffs and Oceanus, El Fenix, or any other insurer. González's implied duty to obtain proper insurance, if it existed, was independent of the contract of marine insurance. The implied contract described by the plaintiffs is in the nature of a contract to procure insurance.

The plaintiff argues that the implied contract to procure insurance is maritime because it is related to a marine insurance contract in force: "the line dividing a maritime contract from a non-maritime contract concerns itself over whether or not a contract *in force* is involved. Record Document 49, p. 5 (emphasis in original). Plaintiff refers us to a quasi-contractual insurance case in which the Ninth Circuit found it jurisdictionally sufficient for a claim to "arise out of" a maritime contract. *Stanley T. Scott & Co., Inc. v. Makah Development Corp.,* 496 F.2d 525 (9th Cir. 1974). In that case an insurance broker was allowed to maintain a maritime claim against the insured for premiums the broker had advanced to the underwriter, even though this would typically be viewed as a claim regarding a contract to procure insurance. The reasoning of *Stanley T. Scott* has not been followed, and it is contrary to the weight of authority. *See e.g. Peralta Shipping Corp. v. Smith & Johnson Corp.,* 739 F.2d 798, 803 n. 5 (2d Cir.1984); *Hall v. S.S. Seafreeze Atlantic,* 423 F.Supp. 1205 (S.D.N.Y.1976). We must

---

contracts implied in fact, rather than implied in law. We assume plaintiff bases the claim on its implied contracts with González, Heath, and Lloyd's.

3. *Lien Ho Hsing Enterprises, Co. v. Weihtag,* 738 F.2d 1455, 1458 (9th Cir.1984); *Edinburgh Assurance Co. v. R.L. Burns Corp.,* 479 F.Supp. 138, 147 (C.D.Cal.1979). The defendant claims that González acted as a reinsurance broker, that a

Mexican company, El Fenix, was the primary insurer, and that González had an implied contractual relationship only with El Fenix. Resolution of this dispute is not necessary, however.

4. We do not decide here that the law of Puerto Rico applies rather than the law of England; we simply discuss the question in the light most favorable to the plaintiff.

limit whatever persuasive impact *Stanley T. Scott* has to cases of quasi-contract; not implied contracts as here.

The plain rule of *Minturn v. Maynard,* 58 U.S. (17 How.) 477, 15 L.Ed. 235 (1854), reiterated in *Kossick,* 365 U.S. 731, 81 S.Ct. 886, is that preliminary contracts are not maritime. Whether the preliminary contract arises out of a maritime contract that is "in force" is not relevant to the inquiry.

In *Arkwright–Boston Manufacturers Mutual Insurance Co. v. Energy Insurance Agency,* 659 F.Supp. 97 (S.D.Tex. 1987), the District Court concluded that an insurance dispute similar to this one was not based on the contract of marine insurance. The controversy resulted from an allegedly unauthorized cancellation of a maritime reinsurance policy. The plaintiff was a reinsurer of a vessel who wished to have its own risk reinsured. The plaintiff used the defendant, a broker, to obtain reinsurance through a Lloyd's underwriter. When the ship was lost, the defendant informed the plaintiff that the policy had been cancelled. The plaintiff sued for wrongful cancellation of the policy. In discussing the application of the insurance contract's choice-of-law provision, the Court said that the dispute over cancellation of insurance did not concern "any contractual provision. The issues are the existence of an agency and breach of that agency." *Arkwright–Boston,* 659 F.Supp. at 98. The agreement to procure reinsurance was thus considered entirely distinct from the contract of marine insurance.

This case rests on the same analysis. Plaintiff is not here requesting interpretation or enforcement of any term in the marine insurance contracts. The claim against González is based on González' alleged breach of an implied contractual duty properly to procure marine insurance. Plaintiff argues that González not only failed to procure proper insurance, but he also reduced plaintiff's coverage unnecessarily. The fact that González' breach may have occurred in re-writing rather than writing of insurance does not change the character of the relationship between González and the plaintiffs—it is an implied contractual obligation to procure insurance. We follow the weight of authority in maritime law and conclude that this is not a maritime contract for purposes of attaining maritime jurisdiction. We thus have no jurisdiction to entertain the plaintiff's cause of action against defendant González. *Paul Marsh, Inc. v. Edward A. Goodman Company, Inc.,* 612 F.Supp. at 628; *Princess Cruises Corp. v. Bayle, Martínez & Fay,* 1974 A.M.C. 433 (N.D. Cal.1974).

### The Contract with Heath

Against Heath, the plaintiff claims that its "theory of liability toward defendants involves not only tort but breach of contract liability under Puerto Rico's 15 year statute of limitations actions of *ex-contractu* actions." Record Document 83, pp. 23–24. The plaintiff describes the contract as follows: "inasmuch as Heath was acting as a co-broker for plaintiffs Arosa Mercantil and Calmer, and Heath's failure to discharge its contractual duties toward plaintiffs was a material breach of contract." *Id.* at 24.

C.E. Heath Public Limited Company and its subsidiaries, C.E. Heath & Co. (Latin America) Ltd., C.E. Heath & Co. (North America) Ltd., and C.E. Heath & Co. (Marine) Ltd. were named as defendants in the complaint. The parent company, Heath, and all its subsidiaries are incorporated and have their principal places of business in the United Kingdom. Heath is an insurance broker operating out of Lloyd's brokerage house in London. Heath (Marine) worked with González to procure insurance or reinsurance of the vessel's hull and machinery.[5] Of the numerous contracts or implied contracts potentially involved in the insurance and reinsurance of the UKOLA,

---

**5.** The parties dispute the nature of the insurance brokered by Heath—insurance or reinsurance. Heath submitted an affidavit claiming that Heath procured reinsurance in 1976 for Manufacturers Trust Company, the original insurer for Arosa and Calmer, at the request of González. The underwriter of the Heath-brokered insurance was Oceanus. Heath (Marine) later issued amendments naming El Fenix as the reassured party.

the only one in which Heath might have an obligation to the plaintiffs is an implied contract of brokerage to procure insurance. Even if a trier of fact were to find that Heath owed an implied obligation to Arosa and Calmer—despite the evidence of a relationship only with González—that obligation arises pursuant to an agreement to procure insurance. As noted above, this has insufficient relation to maritime commerce to be considered a maritime contract.

### The Contract with Lloyd's

The plaintiff's inconsistent pleadings and motions make the inquiry into the alleged contract with Lloyd's Register a difficult one. The complaint sounds in tort: "Lloyd's Register was negligent in advising Oceanus and the hull underwriters that the M/V UKOLA was not in 'class' at the time of the sinking, when in fact, it was in 'class.'" Record Document 1, p. 7. Later submissions added a contractual theory: "plaintiff's theory of liability toward defendants involves not only tort but breach of contract liability," Record Document 22, p. 5.

The contract sued upon, however, is not immediately clear. The plaintiff states that "inasmuch as Lloyd's was acting as a classing agent pursuant to an agreement for plaintiff's ... failure by Lloyd's to discharge its contractual duties toward plaintiffs was a material breach of contract." *Id.* Plaintiff nowhere informs the Court as to the parties to or the nature of this agreement.

Lloyd's Register is a nonprofit classification society with headquarters in London and offices and agents throughout the world. Most vessels are built according to the rules and under the supervision of a classification society. If a vessel is built and maintained according to the specifications of Lloyd's, it attains its classification, and underwriters are willing to insure the vessel. Prior to 1982, Lloyd's maintained no office in Puerto Rico. Inspections of Caribbean vessels were conducted by non-exclusive inspectors.

The UKOLA was classified by Lloyd's, but appeared to have difficulty with the process of maintaining class. According to an affidavit filed by Lloyd's, the UKOLA was due for a Special Survey in June, 1975. The Lloyd's classification committee met in November, 1976, and decided that the UKOLA's classification would be withdrawn if the Special Survey were not completed by December 31, 1976. The plaintiffs confirmed their knowledge of this deadline in a Telex to Lloyd's on December 6, 1976. A non-exclusive surveyor used by Lloyd's for Caribbean surveys, Captain Crocco, conducted a partial Special Survey in December, 1976, or January, 1977. The survey was never completed. On February 25, 1977, the classification committee confirmed the withdrawal of the UKOLA's classification for failure to submit to the Special Survey.[6]

Plaintiffs claim that this decision caused them to litigate claims themselves rather than pursuant to their insurance policy with Oceanus. They say they have spent $300,000.00 in attorney's fees as a result of Lloyd's decision to withdraw classification.

Lloyd's reconsidered the classification question in March, 1977. The parties disagree as to Lloyd's motivation for this decision: plaintiffs claim the decision was made to forestall litigation over the matter; Lloyd's claims it was merely presented with evidence that the longitudinal strength of the UKOLA was satisfactory at the time of the accident. Regardless of Lloyd's reasons, the defendant restored UKOLA's classification, so that the vessel was effectively classified on January 19, 1977.

No written contract has been alleged between the plaintiffs and Lloyd's. Nor have any facts been alleged that would give rise to any quasi-contractual duty on Lloyd's part. Plaintiffs' allegations must be read to claim an implied agreement between

---

6. The plaintiffs did not dispute the Pagan affidavit which stated that Crocco inspected the UKOLA at the request of the owners or agents of the vessel. Pagan Affidavit, Record Document 18, p. 3. Nor do they dispute that the decisions to withdraw classification and then to reinstate it were made by Lloyd's classification committee. Pagan Affidavit.

Lloyd's and plaintiffs to conduct a survey and make classification decisions within a reasonable time. *Cf. Peter Paul, Inc. v. Rederi A/B Pulp,* 258 F.2d 901 (2d Cir. 1958).

■ Lloyd's has not raised the maritime jurisdiction issue in its answer or motions. We must however, consider this question sua sponte. As noted above, to determine our jurisdiction over the alleged implied contract, we must decide whether it is a maritime contract; that is, whether it has reference to maritime services or maritime transactions and whether it advances a maritime purpose. *See* J. Moore, ¶.225, p. 2711. To inform our analysis (and to foster consistency and predictability), we look to the treatment of similar types of contracts by other courts. *Peralta Shipping Corp.,* 739 F.2d at 801, *citing Kossick,* 365 U.S. at 735, 81 S.Ct. at 889–90.[7] An agreement that is preliminary to a maritime contract is not cognizable in admiralty. *Peralta Shipping Corp.,* 739 F.2d at 801. Thus an undertaking to act as a broker in securing cargo is not maritime, nor is an agreement to secure a charter party. *Id.* at 802. Neither is a contract that calls for husbanding a vessel. *Id.* A suit over an agreement to serve as a general agent is not cognizable in admiralty. *Id.* at 803.

■ Some courts have indicated a willingness to treat contracts procuring "the services of marine architects and surveyors to determine the repairs needed to make a vessel seaworthy and to reconstruct a vessel," as maritime. J. Moore, ¶ 230[4.–5], p. 2851. The retention of Lloyd's Registry, through a non-exclusive agent, to conduct a survey that is prerequisite to the mainte-

nance of classification might be considered an analogous agreement.

But the purpose of the agreement in this case does not advance the concerns of admiralty sufficiently to be considered maritime. Here, the implied contract was not in preparation to navigate or conduct marine commerce; rather it was in preparation of procurement of insurance. The plaintiff complains of the actions taken by the classification committee in withdrawing class and of the committee's actions in notifying the underwriters of the withdrawal. These acts relate to the procurement of insurance, not to readiment of the UKOLA for her voyage.

We need not decide if a claim against Lloyd's for a mistaken certification of seaworthiness falls within admiralty jurisdiction. We are faced only with the question whether a classification decision for insurance purposes is maritime. We conclude that it is not. Moreover, the claimed damage is an increase in plaintiffs' obligations for attorneys' fees, an obligation that is even further removed from maritime concerns.

We conclude that the decision by Lloyd's to classify or to withdraw classification was a matter preliminary to the UKOLA's contracts of maritime insurance. Even if the decision to withdraw classification violated an implied contract, the breach was not sufficiently related to maritime concerns. We therefore DISMISS the claim against Lloyd's Register.

*Conclusion*

Because this Court lacks jurisdiction in admiralty over the claims against all three

---

7. The following types of contracts typically fall within admiralty jurisdiction:
  —Contracts for carriage of goods and passengers
  —Chartering of ships (charter parties)
  —Contracts for repairs and supplies to be furnished to vessels
  —Contracts for services such as towage, pilotage, and wharfage

  .   .   .   .   .

  —Contracts for services of personnel aboard vessels whose presence is an aid to the engagement by that vessel in maritime commerce or navigation

  —Recovery of indemnity or premiums on marine insurance policies
The types of contracts that might be thought to be included in maritime jurisdiction but usually are not are as follows:
  —Contracts for the building and sale of vessels
  —Arrangements for the payment of fees for procuring a charter
  —Contracts for services to a vessel laid up and out of navigation.
*See* G. Gilmore & C. Black, The Law of Admiralty, p. 22, 26 (1975); Moore, ¶.230[4.–2], .230[4.–3].

defendants, and because the plaintiff has withdrawn diversity as a basis for jurisdiction, the case is DISMISSED.

The Clerk shall enter Judgment accordingly.

IT IS SO ORDERED.