MARUBENI–IIDA (AMERICA), INC., Kowa American Corp., Mitsubishi International Corp., Chori New York, Inc. and Stahlwood Toy Manufacturing Co., Inc., Libelants,

v.

NIPPON YUSEN KAISHA and S.S. SAGA MARU, her engines, boilers, etc., Respondent.

NIPPON YUSEN KAISHA, Petitioner,

v.

UNIVERSAL TERMINAL & STEVEDORING CORP., Respondent-Impleaded.

United States District Court
S. D. New York.

Jan. 26, 1962.

Burlingham, Underwood, Barron, Wright & White, New York City, Gerard Harrington, Jr., New York City, of counsel, for petitioner.

Hagen, Johnson & Markey, New York City, Richard A. Hagen, New York City, of counsel, for respondent-impleaded.

PALMIERI, District Judge.

This is a suit in admiralty by the consignees of goods against Nippon Yusen Kaisha (N.Y.K. Line), an ocean carrier, for alleged damage to their cargo. Respondent has denied liability, alleging that under its bill of lading its responsibility terminates when the goods leave the ship's deck or tackle. Respondent has also impleaded the Universal Terminal & Stevedoring Corp. (Universal), alleging that the cargo was in apparent good condition when removed from respondent's ship, and was damaged by water thereafter, and while in the possession of Universal. The present motion is an exception by Universal to the impleading petition.

N.Y.K. Line is a common carrier of goods by water and, as such, undertakes to carry and deliver goods to New York. It has a contract with Universal under which the latter discharges and delivers its goods and furnishes it with wharf facilities, and its third-party action is for the alleged breach of that contract. Universal excepts to the impleader on the ground that the contract between it and N.Y.K. Line is not a maritime contract and therefore not within the jurisdiction of this court.[1]

The general rule is that a maritime contract is one having reference to maritime services or maritime transactions. See The New England Marine Insurance Co. v. Duhham, 11 Wall. 1, 78 U.S. 1, 20 L.Ed. 90 (1871); 1 Benedict on Admiralty § 62. Both the loading and unloading of cargo and the furnishing of wharf facilities are maritime services. See American Stevedores v. Porello, 330 U.S. 446, 456, 67 S.Ct. 847, 91 L.Ed. 1011 (1947); Ex parte Easton, 95 U.S. 68, 24 L.Ed. 373 (1877); 1 Benedict on Admiralty § 66. See also, The Gilbert Knapp, 37 F. 209 (E.D.Wis.1889); The Canada, 7 F. 119 (D.C.Oregon (1881). The contract between N.Y.K. Line and Universal to furnish these facilities is therefore a maritime contract. N.Y.K. Line states in its brief, however, that the evidence may show the cargo was damaged as a result of flooding on Universal's wharf. Thus, the third-party action involves not the furnishing of wharf facilities, but damage to goods while on the wharf.

It is clear that admiralty has no jurisdiction over an action for damage to cargo being held for storage purposes. Pillsbury Flour Mill Co. v. Interlake S.S. Co., 40 F.2d 439 (2d Cir. 1930), cert. denied, 282 U.S. 845, 51 S.Ct. 24, 75 L.Ed. 750, but the courts are not agreed on whether admiralty has jurisdiction over an action for damage to cargo held in a dock warehouse prior to loading. Compare, Luckenbach Steamship Co. v. Coast Manufacturing & Supply Co., 185 F.Supp. 910 (E.D.N.Y.1960), with Armstrong Cork Co. v. Farrell Line, 81 F.Supp. 848 (E.D.Pa. 1948). See also, The Czechoslovakia Victory, 76 F.Supp. 808, 809 (S.D.N.Y. 1948). I think it more reasonable to hold that if the cargo is on the wharf as an incident to maritime carriage, whether before loading or after unloading, the action is within the admiralty jurisdiction.

The allegations and objections to jurisdiction in the instant case are similar to those involved in The Milwaukee Bridge, 291 F. 711 (S.D.N.Y.1922). There, too, the libel was for cargo delivered in bad order, the answer alleged that under the bill of lading the consignee accepted discharge at the ship's tackle and that the goods were damaged thereafter, and respondent also impleaded the party who had been engaged to discharge the vessel, alleging that if respondent were held liable for any damage that occurred during the discharge, the third party would be liable to it. Judge Learned Hand held that the court had jurisdiction over the impleader, saying:

"The exception on the score of jurisdiction is not good either. If the discharge did not terminate at the tackles, it was none the less maritime till it did terminate, however much more the contract of carriage required, because in such matters the carriage includes the discharge, though that embrace acts done ashore. The Scotia (D.C.) 35 Fed. 916; The Hattie N. Bain (D. C.) 20 Fed. 389; The Gilbert Knapp

1. The problem here, unlike that discussed in Hidick v. Orion Shipping and Trading Co., 152 F.Supp. 630 (S.D.N.Y.1957), is not one of practice and pleading but one of jurisdiction. In Hidick it was clear that the Court had jurisdiction over the original action on the Civil side and over the third-party action on the Admiralty side and the question was whether both actions could be combined and the suit maintained on the Civil side. In the instant case there is no claim that the third-party action is cognizable in this court as a non-admiralty action. The question is solely whether it is cognizable in admiralty.

(D.C.) 37 Fed. 209. If the libelant recovers, it will be upon a maritime contract, because that is all that it has pleaded, and its recovery must be secundum allegata. If the defense be true, and the contract terminated before any damage occurred, the libelant cannot therefore hold the respondents any more than the claimant for subsequent and independent loss, even though they might be responsible for it upon other pleadings in this or in another court. The petition does not enlarge the libelant's case, but only serves to throw upon the respondents the loss, if a recovery can be had against the claimant. Therefore the case is not one where the claimant tries to interject into the litigation an independent nonmaritime controversy.

"The exception is overruled." (p. 712)

Although it is not clear from the papers before me when the damage is alleged to have occurred in the instant case, analogous reasoning should apply here. If the Court has jurisdiction over the original libel, it will have such jurisdiction because the action is on a maritime contract or on an inseparable incident of a maritime contract. If, on the other hand, the facts developed at the trial indicate that the damage occurred under circumstances not cognizable in admiralty, the Court will not have jurisdiction either over the original libel or over the impleader. This is not a situation in which the obligation alleged to have been breached by the third party is different from the obligation alleged to have been breached by the respondent. Whatever the circumstances giving rise to the damage, the nature of the obligation should not depend on whether it was performed by Universal or by N.Y.K. Line.

 Moreover, although the impleader procedure cannot be used to extend the admiralty jurisdiction beyond its Constitutional bounds, see 2 Benedict § 350 and cases cited in n. 27, these bounds are by no means clear. See Gilmore & Black, The Law of Admiralty, p. 19; see also, Black, Admiralty Jurisdiction; Critique and Suggestions, 50 Colum.L.Rev. 259 (1950); cf. dissenting opinion of Justice Holmes in Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). I do not think the Constitution requires us to multiply litigation needlessly by so defining "admiralty and maritime" cases as to exclude jurisdiction over the impleading petition in the instant case. See Black, supra, pp. 274, 276; see also American Stevedores v. Porello, supra, 330 U.S. at p. 456, 67 S.Ct. 847, 91 L.Ed. 1011.

The exceptions of Universal Terminal & Stevedoring Corp. are overruled.

So ordered.