■ HOME INSURANCE COMPANY, Respondent, v ANN CORCORAN, as Administratrix of the Estate of RICHARD CORCORAN, Deceased, Appellant, et al., Defendants. — Order, Supreme Court, New York County (McGee, J.), entered October 17, 1983, which denied defendant's motion for summary judgment on her counterclaim, is reversed, on the law, and summary judgment on defendant's counterclaim is granted, with costs.

Plaintiff's action for a declaratory judgment arises out of a personal injury and wrongful death action in which defendant Ann Corcoran (Corcoran) and her late husband were struck by an automobile covered under an excess insurance policy by plaintiff, The Home Insurance Company (Home).

The original action awarded Corcoran damages of $1,700,000 in October, 1982. Service of the judgment and demand for payment was made upon Home in November, 1982. Attorneys for Corcoran consented to Home's request for an extension of time to investigate this judgment. In February, 1983 Home commenced this present action for declaratory judgment, seeking exemption from payment obligation, claiming, *inter alia,* that conditions of its policy had been breached.

The conditions allegedly breached relate to the necessity of full payment by underlying insurers as a precondition to payment by the excess insurer; the requirement that underlying insurance be maintained in full effect; the opportunity to associate with underlying insurers in "the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves or appears reasonably likely to involve the Company"; and the right to appeal from a judgment in excess of underlying limits.

Corcoran counterclaimed in this declaratory action claiming that Home failed to meet the requirements under subdivision 8 of section 167 of the Insurance Law. Subdivision 8 of section 167 of the Insurance Law provides that: "If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant."

Corcoran then moved for this summary judgment, alleging that Home had not complied with subdivision 8 of section 167 in giving written notice as soon as reasonably possible. Corcoran further contends, as a matter of law, that Home's failure to disclaim precluded any consideration of any merit in its attempt to avoid payment of its insurance coverage, $700,000. (*Hartford Ins. Co. v County of Nassau,* 46 NY2d 1028.)

Home was aware of possible liability and litigation as early as 1973, when the defendant and her late husband were struck by the automobile. While there was a substitution of counsel and bankruptcy of the primary insurance carrier between 1973 and 1979, Home was notified of counsel substitution in December, 1981. The trial was commenced in April, 1982, with judgment rendered in October, 1982. Home was, at all stages of this action, afforded full opportunity to defend against its potential liability, if it had sought to do so more actively. Careless claims management cannot shield Home from its duty to provide notice to the insured, injured persons and other claimants when denying liability.

Home waited until February, 1983, five months after the original judgment, to bring this declaratory judgment, which it claims provided the written notice of disclaimer. However, this was years after it knew of the claim. Concur — Murphy, P. J., Kupferman, Ross and Milonas, JJ.

Sullivan, J., dissents in a memorandum as follows: I do not believe that Special Term erred in denying defendant's motion for summary judgment on her counterclaim for $700,000, the amount of the judgment obtained by her, individually and as representative of her late husband's estate, in the underlying personal injury action, which arose out of an October, 1973 automobile accident.

Plaintiff is an excess insurer providing the insured, Olins, with a limit of $3,000,000 in excess of the underlying limit of $1,000,000. When the underlying action was commenced in 1974, the primary insurer, American Reserve, with a policy limit of $980,000 over a self-insured retention of $20,000, furnished Olins and the driver of the insured vehicle with a defense. At the time it did not appear that the claim of defendant and her husband would reach plaintiff's excess layer of coverage.

For the next five years plaintiff was kept advised as to the progress of the litigation. Olins, the insured, however, became bankrupt in 1976 and in 1979 American Reserve, which had continued the defense of the action, was placed in liquidation by the Superintendent of Insurance of the State of Illinois. Seaboard Surety, which had provided a surety bond to cover Olins' $20,000 self-retention, and with an exposure limited to that amount, then took over the defense and retained new counsel to replace American Reserve's attorneys. Plaintiff was not notified of the substitution of attorneys until December, 1981 when it contacted the former attorneys to request a status report. Plaintiff thereafter made several attempts to contact Seaboard's attorney but, allegedly, received no response.

The next significant development occurred on or about November 24, 1982 when plaintiff received a letter from defendant's attorney advising it that a judgment had been entered in her favor in the sum of $1,700,000, and demanding payment of $1,680,000, the balance due after crediting Seaboard with payment of its $20,000 obligation. After investigating, plaintiff discovered that the matter had gone to trial, nonjury, on April 22, 1982, and a judgment in defendant's favor had been entered on October 1, 1982. Thus, the time to appeal had expired before plaintiff had even been notified of the judgment. The trial transcript, which was only 17 pages long, revealed that the trial's sole witness was Ann Corcoran, defendant herein, whom Seaboard's attorney did not even bother to cross-examine. In fact, Seaboard's attorney failed to offer any defense or even call the insured driver to give another version of the accident.

Furthermore, he agreed to an increase in the *ad damnum* clause to coincide with the limits of plaintiff's excess policy. The transcript reflects that defendant was not required to introduce the testimony of a physician to support her claims since Seaboard's attorney consented to the admission in evidence of a physician's affidavit in lieu of his trial testimony.

It is against the background of this rather curious trial strategy and generally peculiar circumstances that plaintiff instituted the instant declaratory judgment action to determine its obligations, if any, under its policy. In my view, the failure of Seaboard's attorney to respond to any of plaintiff's inquiries and to make even a token effort at trial raises serious questions warranting further exploration at trial.

The majority places great reliance upon plaintiff's failure to provide for its own defense from as early as 1975. Plaintiff, however, was entitled to rely on the defense offered by American Reserve, the primary insurer, which had retained a law firm prominent in personal injury litigation, especially since the claim did not appear to be one that would reach its high layer of excess coverage. After it was advised of the substitution of attorneys it attempted to contact new counsel but received no response. It cannot be said, as a matter of law, that plaintiff sat back and did nothing, or that its conduct over the course of this litigation was so indifferent as to preclude it from now asserting any policy defenses or unsatisfied policy conditions.

Essential to defendant's argument is that plaintiff failed to give any notice of disclaimer pursuant to subdivision 8 of section 167 of the Insurance Law which, in substance, requires that an automobile liability insurer give written notice of disclaimer or denial of coverage to the insured and the injured person as soon as is reasonably possible. Contrary to defendant's arguments, however, I cannot find, as a matter of law, that plaintiff violated this statutory requirement. Instead of giving such notice it invoked, as it had a right to do, the judicial forum to obtain a declaration of its rights. Moreover, plaintiff's time to disclaim runs not from the time it learned of the judgment, as defendant argues, but from the time it learned of the grounds for a denial of coverage. (Cf. *Hartford Ins. Co. v County of Nassau,* 46 NY2d 1028.) Of course, an insurer's decision to disclaim, once the facts underlying disclaimer are ascertained, should be expeditiously reached. (Cf. *Allstate Ins. Co. v Gross,* 27 NY2d 263.)

Plaintiff commenced this action on February 16, 1983, less than three months after it first learned of the judgment. As its claims analyst states in his affidavit, the intervening time "was necessary in order to find out what had happened and can hardly

be described as excessive * * * under the circumstances." Furthermore, at the time plaintiff first learned of the judgment, defendant's attorney agreed to its request for time to investigate the circumstances which led to the judgment. Defendant should not now be permitted to argue that any time extension to which she agreed constitutes an unreasonable delay. In the circumstances the issue of plaintiff's delay, if any, in giving notice to disclaimer presents an issue of fact.

This lawsuit squarely puts in issue defendant's right, as an unsatisfied judgment creditor, to the proceeds of plaintiff's excess policy under section 167 (subd 1, par [b]) of the Insurance Law. It affords plaintiff the opportunity to litigate the issue of compliance with its policy terms and conditions, including the cooperation of the insured and its primary insurers. In my view this is a most inappropriate case for summary judgment.