**ATLANTIC MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**BALFOUR MACLAINE INTERNATIONAL LTD., Van Ekris & Stoett, Inc., N–Bank—Houston, First National Bank of Minneapolis, B.A.I.I. Banking Corporation, Standard Chartered Bank, Malayen Banking Berhaud, Bank Indosuez, Philadelphia National Bank, Credit Agricole, and Mellon Bank (East) and Mellon Bank International, Defendants.**

**No. 90 Civ. 7080 (SWK).**

United States District Court, S.D. New York.

Sept. 13, 1991.

Donovan Parry Walsh & Repetto, New York City (John A.V. Nicoletti, David R. Hornig and James F. Sweeney, of counsel), for plaintiff.

Hill Rivkins Loesberg O'Brien Mulroy & Hayden, New York City (Caspar F. Ewig, Keith B. Dalen, Richard J. Feinson, of counsel), for defendants Balfour Maclaine Int'l and Van Ekris & Stoett, Inc.

KRAM, District Judge.

This case concerns a dispute over an insurance claim for lost or missing coffee. Presently before the court is defendant Balfour Maclaine International's and Van Ekris & Stoett, Inc.'s motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiff and the moving defendant have also cross-moved against each other for sanctions.

## BACKGROUND

According to the Complaint in this case, Atlantic Mutual Insurance Co. ("Atlantic") issued a Marine Open Cargo Policy ("the Policy") to defendant Balfour Maclaine International, Ltd. ("Balfour") providing in-

surance coverage for coffee, among other goods, and including a "Shore Risks Coverage" clause extending coverage to goods or merchandise that were physically stored at insured locations. In October 1990, defendant Balfour and its subsidiary, defendant Van Ekris & Stoett, Inc. ("Van Ekris") made a claim for $22,096,055.43 under the Policy for the physical loss of approximately 165,564 bags of coffee weighing over 25,000,000 pounds which were allegedly stored in certain Mexican warehouses. Atlantic then brought this declaratory judgment action against Balfour, Van Ekris, and numerous banks to obtain a determination that it is not liable under the Policy.

Atlantic asserts that the question of insurance coverage under the Policy creates an actual case or controversy under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and that the maritime nature of the contract brings the controversy within the federal district courts' admiralty and maritime jurisdiction, 28 U.S.C. § 1333. Atlantic maintains that defendants have not brought forward sufficient evidence to substantiate their claim that the coffee was ever physically stored in insured Mexican warehouses, and therefore are not entitled to recover under the policy. Complaint, ¶¶ 38–40. Even assuming that coffee was stored at insured locations in Mexico and that coverage does exist, Atlantic alleges that defendants have failed to produce sufficient proof of loss and/or amount of loss. Complaint, ¶¶ 42–44. Atlantic seeks a judgment declaring that there is no coverage for defendants' claim under the Policy; that if there is coverage, defendants' evidence is insufficient to prove a claim in the amount of $23,096,055.43; and that plaintiff is entitled to an inspection of defendants' records, accounts and books pertaining to goods insured under the policy, in accordance with the "Inspection of Records" clause of the Policy.

Defendants Balfour and Van Ekris have moved for dismissal for lack of subject matter jurisdiction in accordance with Rule 12(b)(1) of the Federal Rules of Civil Procedure. They argue that there is no maritime jurisdiction. They reason that since Atlantic admits that the alleged losses occurred while in storage in Mexico, the subject of the claim in question has nothing to do with the sea and therefore precludes an assertion of admiralty jurisdiction. Affidavit of Keith F. Dalen, Esq., dated December 7, 1990 (hereinafter "Dalen Aff. I") ¶ 5. Additionally, defendants have submitted affidavits stating that the lost coffee was intended to be transported by truck and not by maritime transportation to Laredo, Texas. Affidavit of Jeffrey Mayer, dated November 15, 1990 (hereinafter "Mayer Aff.") ¶ 3; Affidavit of Carl F. Kimling, dated November 15, 1990 (hereinafter "Kimling Aff.") ¶ 3.

Defendants have also moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure, claiming that Atlantic's Complaint is neither well-grounded in fact nor interposed for a proper purpose. Defendants allege that Atlantic continued to investigate the insurance claim after this action was commenced; consequently, Atlantic's allegation in the Complaint that they had denied the claim was false. Dalen Aff. I ¶¶ 6, 7, 16, 17. Additionally, defendants argue that Atlantic brought this action solely to insure federal jurisdiction for any future litigation in order to gain a tactical advantage over the defendants. Mayer and Kimling Affidavits, ¶¶ 7; Defendants' Memorandum of Law in Support of Motion, at 10. Plaintiffs have responded with their own request for costs against defendants for opposing the motions. Affidavit of John A. V. Nicoletti, dated January 9, 1991 (hereinafter "Nicoletti Aff.") ¶ 27.

## DISCUSSION

### I. Subject Matter Jurisdiction

#### A. *Standards*

 In considering a motion to dismiss for lack of subject matter jurisdiction, the complaint is to be construed broadly and liberally, *Becker v. Beame*, 454 F.Supp. 867, 868 (S.D.N.Y.1978), and all material factual allegations in the complaint are to be accepted as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Niederhoffer, Cross & Zeckhauser, Inc. v. Telstat Systems, Inc.*,

436 F.Supp. 180, 181 n. 1 (S.D.N.Y.1977). However, federal courts are courts of limited jurisdiction, and the burden of establishing subject matter jurisdiction remains with the party asserting jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *Freeman v. Gordon and Breach, Science Publishers, Inc.,* 398 F.Supp. 519, 520 (S.D.N.Y.1975). Additionally, argumentative inferences favorable to the pleader should not be drawn. *Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 147, 69 L.Ed. 413 (1925). Both the movant and the pleader may use affidavits and other extra-pleading material to support or contest the existence of subject matter jurisdiction. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947); *Exchange Nat. Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1131 (2d Cir.1976).

### B. *Admiralty Subject Matter Jurisdiction*

■ The issue of subject matter jurisdiction in admiralty over contracts is often contentious. "The boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw." *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961). Contracts have been held to be within admiralty jurisdiction if its subject matter is maritime, *Insurance Co. v. Dunham,* 78 U.S. (11 Wall.) 1, 20 L.Ed. 90 (1871), and include contracts for maritime insurance. *Id.; see Big Lift Shipping Co. (N.A.), Inc. v. Bellefonte Ins. Co.,* 594 F.Supp. 701, 704 (S.D.N.Y.1984). Ordinarily, a contract must be wholly maritime in nature to fall under federal admiralty jurisdiction. *See, e.g., Simon v. Intercontinental Transport (ICT) B.V.,* 882 F.2d 1435, 1442 (9th Cir.1989); *Cary Marine, Inc. v. Motorvessel Papillon,* 872 F.2d 751, 754 (6th Cir.1989).

■ Despite the apparent absolute nature of the "purely maritime" rule for contracts under admiralty jurisdiction, the federal courts have developed a few exceptions to the rule. Relevant to this case are those situations where admiralty jurisdiction is found to govern "mixed" contracts, i.e. contracts combining maritime and nonmaritime subject matter or obligations. The lead case in this circuit on the topic of contracts of a mixed nature is *Compagnie Francaise de Navigation a Vapeur v. Bonnasse,* 19 F.2d 777 (2d Cir.1927), *cert. denied,* 275 U.S. 551, 48 S.Ct. 114, 72 L.Ed. 421 (1927). There, Judge Hand stated that

> [T]he rule that a contract to be within the jurisdiction of the admiralty must be wholly maritime.... is usually not misleading. (Citations omitted) The reason for it is plain enough. A contract both maritime and nonmaritime is ordinarily indivisible, so that the rights of the parties cannot be adjusted separately, those maritime in the admiralty, and the rest elsewhere. Admiralty must refuse to assume any jurisdiction over it at all, because it must either ignore the principles of the law of contract, or extend its powers beyond their constitutional scope. But in so far as the maritime obligations may, consistently with those principles, be separately adjudicated, there is no objection to the jurisdiction of the admiralty pro tanto.... The mere fact that the contract covers a subject-matter of both kinds is not therefore decisive; that would make the mere form control. *The substantial question is whether the maritime obligations can be separately enforced without prejudice to the rest.*

19 F.2d at 779 (emphasis added). Courts following Judge Hand's analysis consider that mixed contracts fall under admiralty jurisdiction if the maritime portions of the contract are "separable" from the nonmaritime portions or if the nonmaritime elements are only "incidental" or "not substantial" relative to the maritime elements. *See, e.g., Kuehne & Nagel v. Geosource, Inc.,* 874 F.2d 283, 290 (5th Cir.1989); *Puerto Rico Maritime Shipping Auth. v. Luallipam, Inc.,* 631 F.Supp. 1472, 1474 (D.P.R.1986); *Outbound Maritime Corp. v. P.T. Indonesian Consortium of Constr. Industries,* 582 F.Supp. 1136, 1142 (D.Md. 1984).

### 1. Separately Enforceable Maritime Obligations

*Compagnie Francaise* states that admiralty jurisdiction exists over claims involving maritime obligations in contracts containing both maritime and nonmaritime obligations as long as the maritime obligations can be separately adjudicated and enforced without prejudice to the rest. 19 F.2d at 779. The Second Circuit in *Berwind–White Coal Mining Co. v. New York* similarly decided that federal courts retain jurisdiction over cases involving "mixed contracts whose maritime subject matter is capable of being divided form the rest so that the rights of the parties which flow from the non-maritime part of the contract may be, if necessary, litigated separately and only that part which is maritime be put in issue in the admiralty suit." 135 F.2d 443, 447 (1943). That case involved a contract allowing a railroad to extend its tracks by means of a trestle to its leased pier, but obligating the railroad to restore the bed if the trestle were removed. The Court upheld a finding of jurisdiction over a claim involving the obligation to restore the bottom of the slip, even though the extension of the railroad's tracks was essentially nonmaritime. *Id.* at 446–47.

### 2. Separately Enforceable Nonmaritime Obligations

Conversely, there is no jurisdiction when maritime and nonmaritime aspects of a contract are separable and the claim involves only the nonmaritime aspects of the contract. In *Paul Marsh, Inc. v. Edward A. Goodman Co.*, 612 F.Supp. 635 (S.D.N.Y.1985), a claim was made under a marine insurance contract for missing hog bristles that had been stored in a warehouse for two years after their transport by sea. The Court decided that a claim under the warehouse endorsement of the insurance contract could not itself be characterized as "marine" and thus could not subject the insurer to federal admiralty jurisdiction. 612 F.Supp. at 639–40; *see also Pillsbury Flour Mills Co. v. Interlake S.S. Co.*, 40 F.2d 439 (2d Cir.1930), *cert. denied* 282 U.S. 845, 51 S.Ct. 24, 75 L.Ed. 750 (1930) (storage portion of grain shipping contract was nonmaritime and so did not confer admiralty jurisdiction where loss occurred after transportation was completed); *Armstrong Cork Co. v. Farrell Line, Inc.*, 81 F.Supp. 848 (E.D.Pa.1948) (no admiralty jurisdiction where loss occurred in warehouse on pier prior to shipment of goods, since the obligation to be enforced was separable from the maritime features of the contract).

### 3. Inseparable Maritime and Nonmaritime Obligations

When maritime and nonmaritime obligations cannot be enforced separately, federal courts have usually denied admiralty jurisdiction over any part of the contract. In *Kuehne & Nagel*, the court decided that maritime and nonmaritime obligations of a contract covering land and sea transportation could not be enforced separately where the land-based operations were substantial, the claim of breach covered both land and sea-based portions, and each bill of lading contained a single, fixed freight charge for the total land/sea voyage. 874 F.2d at 290; *see also Alaska Barge and Transport, Inc. v. United States*, 373 F.2d 967, 972, 179 Ct.Cl. 216 (1967) (maritime and nonmaritime aspects of contract not separable where bills of lading listed only single charges for shipments involving land and water transportation); *Outbound Maritime Corp.*, 582 F.Supp. at 1142–43 (same).

### 4. Inseparable Mixed Obligations with Incidental Nonmaritime Components

Even where maritime and nonmaritime provisions of a contract are indivisible, federal courts may nevertheless exercise admiralty jurisdiction over the entire contract if the nonmaritime obligations are "incidental" to the maritime obligations. In *Marubeni–Iida (America), Inc. v. Nippon Yusen Kaisha*, 207 F.Supp. 418 (S.D.N.Y.1962) the Court ruled that a claim involving damage to cargo on a wharf immediately prior to loading or after unloading is within admiralty jurisdiction and the carrier may implead the terminal facility. The Court stated that although admiralty does not cover claims for damage to cargo being held for storage purposes, the status

of goods on the dock is at least arguable. 207 F.Supp. at 419; *see also Luckenbach S.S. Co. v. Coast Mfg. & Supply Co.*, 185 F.Supp. 910, 922 (E.D.N.Y.1960) (contract to transport goods includes inseparable obligations with respect to cargo awaiting shipment on wharf, since some delay must occur between delivery of goods to the dock and the loading of cargo). Contractual provisions for indemnity for damages arising out of an otherwise wholly maritime contract also fall under this exception. *American Stevedores, Inc. v. Porello*, 330 U.S. 446, 456, 67 S.Ct. 847, 852–53, 91 L.Ed. 1011 (1947). The policy of avoiding needless multiple litigation supports a broad construction of "admiralty and maritime" cases in such instances. *See id.*; *Marubeni–Iida*, 207 F.Supp. at 420.

## C. *Application to the Instant Case*

■ The present motion raises the question of whether the parties to the instant (coffee) contract can invoke this Court's admiralty jurisdiction. An obligation to insure goods against loss is itself neither inherently maritime nor inherently nonmaritime. The nature of the contract depends on the kinds of interests that are insured. *Simon*, 882 F.2d at 1441; *Royal Ins. Co. of America v. Pier 39 Ltd.*, 738 F.2d 1035, 1036 (9th Cir.1984).

The Policy here clearly contains both maritime and nonmaritime obligations. Several clauses in the Policy pertain to insurance coverage of goods while in "interior" or "inland" locations, or while in warehouses. Exhibit 1, Clauses 5(C), 13(C)(1), 26, Special Conditions 1, 9 (Shore Risks Coverage clause). Additionally, Atlantic admits that the contract provides insurance coverage for certain goods while in storage in warehouses, Complaint ¶ 4, and that such coverage extends to inland locations. Pl. Memo. at 2–3. Whether the inland coverage is deemed "secondary" or not, as plaintiffs contend, *Id.* at 3, the fact remains that the insurance contract is not purely maritime in nature and does not insure only maritime interests.

Since the contract contains both maritime and nonmaritime obligations, the Court must determine whether the maritime and nonmaritime obligations are separable, and if so, whether the obligations relevant to the dispute are maritime or nonmaritime in nature. If the obligations are not separable, the Court must determine whether the nonmaritime obligations are incidental to the maritime obligations.

### 1. Separable Nature of the Nonmaritime Obligations

Atlantic's obligation to insure goods in inland locations while awaiting shipment is clearly separable from its obligation to insure the goods while engaged in marine transit. Atlantic itself is able to calculate the premium payments separately for ocean and non-ocean insurance, stating that 54% of all paid premiums are for ocean marine transit coverage. Pl. Memo. at 3, 4, 24. Its ability to distinguish premiums stemming from ocean shipment from those resulting from other activities indicates that the maritime and nonmaritime obligations are indeed capable of separate enforcement. The situation in this case is not at all comparable with *Kuehne & Nagel, Alaska Barge*, or *Outbound Maritime*, where combined bills of lading for the land and sea obligations made the maritime and nonmaritime obligations incapable of separate enforcement.

Moreover, this contract does not raise the difficulty focused upon by Judge Hand where the enforcement of one type of obligation in a mixed maritime-nonmaritime contract would prejudice enforcement of the other type. There is no reason to suspect that a determination of liability as to the amount and quality of proof required to establish a land-based loss under an insurance contract would not have any prejudicial effect concerning the marine obligations of the contract. Therefore, this Court concludes that, as a matter of law, separate enforcement of the nonmaritime obligations in Atlantic's insurance contract would not in any way prejudice the enforcement of any maritime obligation of Atlantic's contract.

Plaintiff's arguments to the contrary are not persuasive. Atlantic contends that the aspect of the contract relevant to this dis-

pute, the Shore Risk Coverage portion, cannot be "severed" from the terms of the ocean marine policy since numerous clauses in the Shore Risk Coverage portion require reference to the terms and conditions of marine portions of the policy. Pl. Memo. at 3–4, 27. Atlantic also argues that since the Shore Risk portion of the contract applies only to shipments that have already been declared under the marine aspects of the policy, the Shore Risks Coverage clause is not severable from the rest of the policy and therefore disputes concerning the Shore Risks Coverage clause alone would fall within this Court's jurisdiction. Pl. Memo. at 19.

■ These arguments are misguided. As Judge Hand instructed, the question is not whether the contract is formally severable, but whether the different types of *obligations* imposed on the parties are capable of being separately enforced without prejudice to each other; "mere form" ought not control the outcome. *Compagnie Francaise*, 19 F.2d at 779. The clauses referred to by the Shore Risks Coverage portion of the policy are not inherently maritime,[1] and there is no reason why the relevant clauses could not have been written into the Shore Risk Coverage portion of the contract itself. Indeed, if the clauses had been included only in the Shore Risk Coverage portion of the contract and the marine portions had to refer to these clauses, the character of the contract would remain the same. To determine separability by testing whether a portion of a contract is self-contained would place mere form ahead of substance. Similarly, the fact that a maritime obligation may be a precondition of the implementation of a nonmaritime obligation does not affect the question of whether the different obligations under the contract are separately enforceable without prejudice to each other.[2]

### 2. Nonmaritime Nature of the Obligation

The Court concludes that the contractual obligation at issue in this case is nonmaritime in nature. The subject matter of the instant declaratory judgment action is losses that allegedly occurred prior to marine shipment in warehouses not on or near any dock, wharf, or any other structure that is distinctly maritime in nature. Even if, as plaintiffs contend, the missing coffee was to eventually be shipped by marine vessel,[3] the particular claim in this case for which an interpretation of the contract is sought is not in any way associated with traditional maritime concerns.

The Second Circuit cautions against interpreting the phrase "maritime transaction" so broadly as to encompass virtually every commercial transaction. It has stated:

application of the broad verbal formulations cited above [4] requires some limiting recognition 'that the actual concerns of

1. Plaintiff names the relevant clauses as interest insured, valuation; strike, riot and civil commotion coverage; nuclear exclusions; notice of loss; payment of loss; partial loss; subrogation; carriers clause; duty of the insured; other insurance; certificates; inspection of records; brokers; and cancellation of records.

2. Atlantic also asserts that defendants' claim includes $8,000,000 "in transit" losses occurring within Mexico, and that trucking receipts purportedly show a delivery of coffee to a major Mexican port designated as an export location in the contract. Plaintiff contends that this Court has jurisdiction over at least this portion of the claim, and therefore has supplementary jurisdiction over the balance. Nicoletti Aff., ¶ 15. These statements ignore the question of whether the nonmaritime obligations are capable of being separately enforced from the maritime obligations. Since the obligation to insure against loss during inland transit is still essentially nonmaritime in nature, Atlantic's assertions remain unpersuasive.

3. This contention appears nowhere on the face of the Complaint, but in Plaintiff's brief. Pl. Mem. at 5.

4. The Court previously referred to cases stating that "[t]he only question is whether the transaction related to ships and vessels, masters and mariners as agents of commerce ...", and that a definition of a maritime contract is one "for the furnishing of services, suppliers or facilities to vessels ... in maritime commerce or navigation," or "principally connected with maritime transportation." 739 F.2d at 801 (quoting, respectively, *Kossick v. United Fruit Co.*, 365 U.S. at 736, 81 S.Ct. at 890; 7A J. Moore, *Moore's Federal Practice* ¶ .230[3] (2d ed. 1983); Gilmore & Black, *The Law of Admiralty* 31 (2d ed. 1975).

the shipping industry may reach as far as the last ranch that sends cattle to port, and, even without stretching the matter at all, maritime transactions are inseparably connected with and shade into the non-maritime.'

*Peralta Shipping v. Smith & Johnson (Shipping) Corp.*, 739 F.2d 798, 801 *cert. denied*, 470 U.S. 1031, 105 S.Ct. 1405, 84 L.Ed.2d 791 (1985) (quoting Gilmore & Black, *The Law of Admiralty* 29 (2d ed. 1975)). In the present case, although the loss of goods stored in warehouses may have some financial connection with planned maritime commercial transactions, the obligation to insure goods is not "inseparably connected" with the obligation to insure goods during marine transport. The possibility that the lost coffee may have been designated to be transported by ship at some later point in its commercial life is insufficient to create a concern with direct maritime concerns that would justify an assertion of admiralty jurisdiction. Clearly, the present dispute concerns the obligation of Atlantic to insure goods during inland storage, and therefore is nonmaritime in nature.

Plaintiff relies on *Newark Insurance Co. v. Fasolino Foods* for the proposition that a request for construction of a marine contract is properly heard under federal admiralty jurisdiction. 1988 AMC 1005, 1007 (S.D.N.Y.1988). In that case, the Court decided that an insurance company's declaratory judgment action for a determination of rights and liabilities under a marine insurance policy fell within federal admiralty jurisdiction. 1988 AMC at 1007. *Newark Insurance*, however, is distinguishable, as the contract in that dispute covered "shipments declared by the insured both during their passage at sea and during *short term storage at a marine warehouse*." 1988 AMC at 1006 (emphasis added). Unlike in *Newark Insurance*, the insurance coverage in this case is not restricted either to short term storage or

marine warehouses. The obligation to insure goods in short term storage at a marine warehouse subsequent to a delivery of cargo may be sufficiently maritime in nature to justify an assertion of admiralty jurisdiction. The obligation to insure goods at inland locations and in nonmaritime warehouses not at all proximate in time to sea transport, however, is not analogous to the obligation at issue in *Newark Insurance*.

In situations involving a mixed contract with separable maritime and nonmaritime obligations, "a breach of that contractual obligation which is nonmaritime may not be the subject of a suit in admiralty." *Pillsbury Flour*, 40 F.2d at 441. Since this dispute involves a separable nonmaritime obligation of a mixed maritime and nonmaritime insurance contract, it does not fall within this Court's limited federal admiralty jurisdiction.

### 3. Incidental Nature of the Nonmaritime Obligations

 Atlantic argues that the nonmaritime aspects of the insurance contract in question are only incidental to the maritime aspects. It argues that 94% of previous claims were of a maritime nature and 54% of all paid premiums are for ocean marine coverage. Pl. Memo. at 3, 4, 24. The Court need not reach the question of whether the nonmaritime obligations are incidental to the maritime obligations.[5] If a contract's maritime and nonmaritime obligations are separable, then the question of whether the nonmaritime obligations are "incidental" is irrelevant. "The true rule seems to be that if a contract is maritime, it carries with it all its incidentals, which, though non-maritime in nature in themselves, will be heard and decided in admiralty, *unless separable*." *Armstrong Cork Co.*, 81 F.Supp. at 848 (emphasis added).

---

5. In any case, this Court would not find an insurance contract's nonmaritime obligations as "merely incidental" where 46% of the premiums paid under the contract are not for ocean marine coverage. *Cf. Outbound Maritime*, 582

F.Supp. at 1142 (contract involved substantial, not merely incidental, nonmaritime services where more than half of the charges under the contract were for nonmaritime duties.)

### 4. Other Considerations

Nor is there a compelling policy argument to construe federal admiralty jurisdiction as including the interpretation of an insurance contract containing separable maritime and nonmaritime obligations where the subject matter of the claim is nonmaritime. In such a dispute, "the owner and insurer need neither admiralty's guarantee of a neutral federal forum to guard against the possible prejudice of local courts, nor its guarantee of a nationwide uniform maritime law." *Royal Ins. Co.*, 738 F.2d at 1038. Given that federal courts in admiralty should look to state law in interpreting insurance contracts, *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), the concerns about possible local prejudice and the need for a uniform nationwide maritime law are minimal at best, especially considering the nonmaritime nature of the alleged loss in question. Additionally, a refusal to extend federal admiralty jurisdiction to this case would not result in any needless multiplication of litigation.

Because this claim concerns a nonmaritime obligation, and that the maritime obligations of the contract are separable from the nonmaritime obligations of the contract, the Court concludes as a matter of law that this dispute does not fall within its limited federal admiralty jurisdiction.

### II. Sanctions

#### A. *Defendants' Rule 11 Motion*

 Rule 11 of the Federal Rules of Civil Procedure provides in relevant part that

[e]very pleading, motion, and other paper of a party represented by an attorney shall by signed by at least one attorney of record.... The signature of an attorney ... constitutes that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well founded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not imposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....

Under Rule 11, an award of sanctions should not be imposed on a subjective determination of bad faith, but instead should depend on whether "a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985). In considering sanctions, the court should "resolve all doubts in favor of the signer." *Oliveri*, 803 F.2d at 1275. Rule 11 has been violated "where it is patently clear that a claim has absolutely no chance of success under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Eastway*, 762 F.2d at 254. The district courts have wide discretion for determining lack of factual basis or improper motivation for an attorney's actions. *Quadrozzi v. New York*, 127 F.R.D. 63, 80 (S.D.N.Y.1989).

 Defendants move for sanctions on two grounds. First, they argue that Atlantic's suit was filed for an improper purpose, namely to "lock in federal jurisdiction for any future litigation involving Balfour and Van Ekris' creditors." Affidavit of Keith F. Dalen, Esq., dated January 16, 1991 ¶ 24.

Resolving all doubts in favor of Atlantic, the Court sees no basis for finding that the Complaint was unwarranted by existing law or interposed for an improper purpose. The Court finds that Atlantic had a legally colorable argument for asserting federal admiralty jurisdiction. On the basis of the record of this case, a reasonable attorney could believe that federal admiralty jurisdiction existed over the claim, or that a reasonable argument could have been advanced to support such jurisdiction. This

**110**

Court will not sanction a party or its attorney for attempting to assert a legal right in a forum which could reasonably be believed to have jurisdiction over its claim, even though that belief ultimately is found to be incorrect as a matter of law.

As their second basis for a Rule 11 motion, defendants argue that the Complaint contains a deliberately false allegation. The Complaint, filed on November 2, 1990, alleges that Atlantic had declined Balfour's insurance claim for the lost coffee. Complaint ¶ 39. According to the defendants, however, Atlantic's Marine Claims Manager Allen Sanders stated on November 5 that the insurance claim had not yet been declined. Dalen Aff. I ¶ 7; Mayer Aff. ¶ 9; Kimling Aff. ¶ 9. Furthermore, on November 15, 1990, one of Atlantic's lawyers forwarded a request from Atlantic's auditor for documents in order to "assist in the investigation of this claim." Dalen Aff. I ¶ 15. Defendants argue that the insurance claim had in fact not been declined at the time the Complaint was filed, and that the allegation to the contrary in the Complaint was a deliberate falsehood designed to create a suit subject to federal jurisdiction.

Again, construing the Complaint in the light most favorable to the signer, there is no basis to conclude that the Complaint was not well founded in fact. Under New York law, the filing of a declaratory judgment action by an insurance company concerning liability for a particular claim is sufficient notice of disclaimer. "It constitutes unequivocal, unambiguous notice, properly served." *Norfolk & Dedham Mutual Fire Ins. Co. v. Petrizzi*, 121 A.D.2d 276, 277, 503 N.Y.S.2d 51, 53 (1st Dept. 1986); *see Home Ins. Co. v. Corcoran*, 107 A.D.2d 561, 563–65, 483 N.Y.S.2d 300, 302–04 (1st Dept.1985) (Sullivan, J., dissenting) (dissent adopted by New York Court of Appeals, 65 N.Y.2d 1035, 494 N.Y.S.2d 294, 484 N.E.2d 657 (1985)). The Court finds that there was no deliberate falsehood because the filing of the Complaint operated as an automatic declination of the insurance claim.

Since Atlantic's declaratory judgment action constitutes a continuing denial of defendants' insurance claim, any statement made by Mr. Sanders at the November 5th meeting would not affect the legal status of Atlantic's position in the dispute. Although Mr. Sanders's alleged statements might have been construed as misleading, such statements cannot be the subject of Rule 11, which applies only to signed papers and not to statements made at informal meetings. Furthermore, Atlantic's declination of the insurance claim was based at least in part on its belief that defendants had not introduced sufficient proof of loss. Since additional documentation regarding the claim might have remedied this alleged defect, its request for further information regarding the claim may not be taken as evidence that the claim was not being declined due to the alleged insufficiency of information supplied by defendants. Therefore, the Court concludes that Rule 11 sanctions are not appropriate in this instance.

### B. *Plaintiff's Request for Costs*

Atlantic has requested an award for counsel fees for opposing what it calls a "frivolous" application for sanctions. Nicoletti Aff. ¶ 27. The Court does not see that such a step is warranted. Plaintiff's request for costs for defending the motion is therefore denied.

### III. Court's Motion *Sua Sponte* to Dismiss Complaint as to Non–Moving Defendants

Atlantic's Complaint does not raise any separate claims against the defendant banks, which have not joined defendants Balfour and Van Ekris's motion for dismissal. The only connection between the banks and this case is that the banks become insureds under certain endorsements to the policy. Complaint ¶¶ 12–16, 18, 20, 23, 25. Atlantic presents no other claims against the defendant banks over which this Court has jurisdiction. Accordingly, the Court will dismiss the amended Complaint with respect to the non-moving as well as the moving defendants for the reasons stated above.

The Court's dismissal of plaintiff's Complaint is without prejudice to refile in an appropriate state court.

## CONCLUSION

For the reasons stated above, the Court grants defendants Balfour Maclaine's and Van Ekris & Stoett's motions pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and dismisses the Amended Complaint with respect to all defendants without prejudice for plaintiff to refile in state court. Defendants' motion for Rule 11 sanctions and plaintiff's request for counsel fees are denied.

SO ORDERED.