OPINION OF THE COURT
George J. Silver, J.
In this commercial holdover proceeding, petitioner Port Authority of New York and New Jersey moves for an order restoring the proceeding to the Civil Court calendar. Respondent American Warehousing of New York, Inc. (AWNY) cross-moves for an order staying the proceeding pending the disposition of a Federal Maritime Commission (FMC) action instituted by AWNY pursuant to the Shipping Act of 1984 (the Shipping Act or Act). In the alternative, AWNY cross-moves for an order, pursuant to CPLR 3211 (a) (4) and (7), dismissing the Port Authority’s petition without prejudice.
I. Procedural Posture
This case arises out of a dispute between the Port Authority and AWNY over a marine terminal lease of pier 7 at the Brooklyn Marine Terminal. On July 6, 2004, the Port Authority filed a petition for business holdover seeking to evict AWNY from the northern half of pier 7. In response, on August 5, 2004 AWNY filed a complaint with the FMC alleging various discriminatory practices by the Port Authority in violation of the Shipping Act. Simultaneously, AWNY removed the Port Authority’s action to the United States District Court for the Southern District of New York. However, in an order dated November 10, 2004, the District Court held that it lacked jurisdiction over the case and remanded it to this court.
II. The Port Authority’s Motion to Restore
In light of the fact that the United States District Court for the Southern District of New York has remanded the instant proceeding to this court, and the fact that AWNY has no opposition to said remand, the Port Authority’s motion to restore the proceeding to the Civil Court’s calendar is hereby granted.
III. AWNY’s Cross Motion to Stay
In cross-moving for an order staying or, in the alternative, dismissing without prejudice the Port Authority’s holdover proceeding, AWNY argues that this court does not have jurisdic *517 tion over the proceeding because it falls within the exclusive admiralty/maritime jurisdiction of the federal courts. Arguing that the marine terminal lease’s involvement with maritime commerce is sufficiently demonstrated by the specific purposes for which the lease was executed, i.e., the loading, unloading and storage from merchant ships of cocoa bound for domestic chocolate factories, and that there is no specific state interest at stake, AWNY contends that the lease for pier 7 is a maritime contract governed by maritime law, which, pursuant to the United States Constitution and federal statute, the federal courts have exclusive jurisdiction over.
AWNY also contends that Congress, through its enactment of the Shipping Act, granted the FMC exclusive regulatory oversight of maritime leases by and between marine terminal operators. AWNY claims that it and the Port Authority are “marine terminal operators” as defined by the Act, and that the Port Authority, in contravention of the Act, failed to negotiate in good faith with AWNY for a long-term extension or renewal of the pier 7 lease. AWNY further claims that the Port Authority, in an attempt to exert unfair pressure on AWNY during the negotiations for pier 7, instituted multiple landlord-tenant proceedings to evict AWNY from its occupancy of pier 7. Moreover, AWNY argues that the Port Authority’s refusal to renew the pier 7 marine terminal lease will not only adversely impact the local New York/New Jersey economy by forcing AWNY to shut down its operations at pier 7 and lay off its workers, but will also both irreparably harm AWNY’s ability to compete in the United States for the warehousing of break bulk cocoa and adversely affect the foreign commerce of break bulk cocoa.
Finally, AWNY contends that the instant proceeding should be stayed pursuant to the doctrine of primary jurisdiction. AWNY claims that the primary jurisdiction doctrine serves as a means of coordinating judicial and administrative machinery, and that said doctrine applies whenever the enforcement of claims on a complaint requires the resolution of issues which have been placed within the special competence of an administrative body. Arguing that the regulatory oversight of harbor leases rests exclusively with the FMC, AWNY claims that a stay of this proceeding would not only enable the FMC to apply its expertise in adjudicating the rights of marine terminal operators in maritime lease disputes, but would also advance Congress’ intent that the maritime industry be uniformly regulated by the FMC. AWNY also argues that the Port Author *518 ity will not be prejudiced by a stay of this proceeding because AWNY has tendered all rents and charges owed to the Port Authority pursuant to the terms of the lease, or, in those instances where the Port Authority has refused to accept payment, has deposited such payments in an escrow account for the Port Authority’s benefit.
In opposition, the Port Authority contends this holdover proceeding does not arise from a maritime contract because AWNY does not have a lease for the northern half of pier 7. According to the Port Authority, AWNY had a lease for the southern portion of pier 7, which expired on April 30, 2003, but only an option to lease the northern half, which the Port Authority claims AWNY never exercised. Even if AWNY had entered into a lease agreement for the northern half of pier 7, the Port Authority argues, such a lease is one for a wharf, and therefore not a maritime contract. Moreover, the Port Authority claims that the instant proceeding is an inherently local one that is governed not by federal maritime law but by New York real property law.
The Port Authority further contends that nothing in either the language or purpose of the Shipping Act suggests that the EMC has jurisdiction over this eviction proceeding and argues that the purposes of the primary jurisdiction doctrine would not be served by its application here. According to the Port Authority, resolution of the issues raised in this holdover proceeding does not require an administrative agency’s specialized expertise, but is instead clearly within the competence of this court. Moreover, the Port Authority argues that it would be severely prejudiced by a stay of the instant proceeding because AWNY’s continued occupancy of pier 7 is preventing the Port Authority from completing negotiations with a prospective new tenant for a lease of both the northern and southern halves of pier 7. In the Port Authority’s view, a stay of this proceeding would also allow AWNY to continue to unjustly enrich itself through its rent-free use of pier 7.
In reply, AWNY concedes that the lease agreement between it and the Port Authority is for the southern half of pier 7, but argues that both it and its predecessor used the northern half of pier 7 for spillover activities with the express permission of the Port Authority. AWNY further claims that the rent charged in the lease reflects the value of AWNY’s occupancy of the entire pier, not merely the southern half. AWNY also reiterates its claim that because the lease requires AWNY to participate in *519 maritime services and transactions, it is a maritime contract that is subject to the admiralty jurisdiction of the federal courts. AWNY contends that the FMC is the proper forum to address the substantive disputes over the lease and argues that a decision by the FMC regarding the Port Authority’s alleged violations of the Shipping Act would be frustrated, and possibly rendered moot, if this holdover proceeding was allowed to move forward and AWNY was evicted from pier 7. AWNY further argues that this proceeding should be stayed on the ground that AWNY has satisfied the elements necessary for a Yellowstone injunction to issue.
IV Analysis
A stay is defined as “a direction of the court, usually embodied in an order, ‘freezing’ an action or proceeding pending before it at whatever point it has reached and precluding it from going any further” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2201:l, at 7). CPLR 2201 states that “[e]xcept where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just.” The broad language of CPLR 2201 has, however, been limited by case law (Hope’s Windows v Albro Metal Prods. Corp., 93 AD2d 711, 712 [1st Dept 1983]; 660 Riverside Dr. Aldo Assoc. v Marte, 178 Misc 2d 784, 786 [Civ Ct, NY County 1998]). Thus, “[t]o impose a stay in one action pending the resolution of a related action, there must be a complete identity of parties, claims, and reliefs sought in the two actions” (Green Tree Fin. Servicing Corp. v Lewis, 280 AD2d 642, 643 [2d Dept 2001]; see also Rael Automatic Sprinkler Co. v Solow Dev. Corp., 58 AD2d 600 [2d Dept 1977]).
AWNY’s first claim, that this proceeding should be stayed because it falls within the exclusive maritime jurisdiction of the federal courts, lacks merit. Applying the Supreme Court’s conceptual approach[1] to determining whether a contract is a maritime one, which requires an examination of the contract to determine whether its principal objective is “maritime commerce” (Norfolk S. Ry. Co. v Kirby, 543 US —, —, 125 S Ct 385, 394 [2004]), it is apparent that the lease for the northern half of *520 pier 7[2] is not a maritime contract. Under the conceptual approach, the answer to whether a contract is a maritime one “ ‘depends upon . . . the nature and character of the contract,’ and the true criterion is whether it has ‘reference to maritime service or maritime transactions’ ” (Norfolk S. Ry., 543 US at —, 125 S Ct at 393, quoting North Pac. S.S. Co. v Hall Bros. Mar. Ry. & Shipbuilding Co., 249 US 119, 125 [1919]). The conceptual approach accomplishes its purpose of protecting maritime commerce by focusing the inquiry “on whether the principal objective of a contract is maritime commerce” (Norfolk S. Ry., 543 US at —, 125 S Ct at 394).
Although article IV of the lease provides that AWNY is to use and occupy the pier “[f]or the temporary receipt, storage and distribution of cocoa beans and related cocoa products,” the lease contains no express reference to either maritime services or maritime transactions. If, however, some reference to maritime services or transactions is implied in article IV given that AWNY is receiving, storing and distributing cocoa beans from merchant ships, the fact remains that the contract in question is a commercial lease agreement, the principal objective of which is not to effectuate maritime commerce, but to effectuate the conveyance of a leasehold interest in real property to AWNY, as tenant, from the Port Authority, as landlord. The contract is not a bill of lading or an intermodal transportation contract for international shipping (compare Norfolk S. Ry., 543 US at —, 125 S Ct at 390, 394). It is not a lease of cargo containers for use on a ship (compare CTI-Container Leasing Corp. v Oceanic Operations Corp., 682 F2d 377 [2d Cir 1982]). It is not a contract between AWNY and an ocean carrier for the loading and unloading of cargo and the furnishing of wharf facilities (compare Marubeni-Iida [Am.], Inc. v Nippon Yusen Kaisha, 207 F Supp 418 [SD NY 1962]). It is not a freight forwarding contract (compare Ingersoll Milling Mach. Co. v M/V Bodena, 829 F2d 293 [2d Cir 1987]). It is a lease of a pier, not a maritime contract, and to hold otherwise would fly in the face of decades worth of federal case law (see Buck Kreihs Co., Inc. v Board of Commrs. of Port of New Orleans, 1997 WL 666220, *3 [ED La, Oct. 27, 1997] [“(t)he cases consistently characterize a lease of wharf space as a non-maritime contract”]; Simon v Intercontinental Transp. [ICT] B.V., 882 F2d 1435, 1441 [9th Cir 1989] [“(a)s a general rule, the lease of a pier or wharf is not a maritime *521 contract unless the lease is tied to the provision of wharfage for a specific vessel”]; Gowanus Stor. Co. v United States Shipping Bd. Emergency Fleet Corp., 271 F 528, 530 [ED NY 1921] [“a lease of a wharf is not a maritime contract on which may be maintained an action in admiralty for the collection of the rent”]).
Moreover, as the United States District Court noted in its decision remanding this proceeding, the Port Authority’s holdover petition “straightforwardly pleads an ordinary landlord’s claim to premises against a tenant whose lease has expired, pursuant to New York Real Property Actions and Proceedings Law § 731(3).” (Port Auth. of N.Y.& N.J. v American Warehousing of N.Y., Inc., 2004 WL 2584886, *1, 2004 US Dist LEXIS 23121, *3 [SD NY, Nov. 10, 2004].) New York clearly has an interest in seeing that its real property law is administered in a uniform fashion. Furthermore, if AWNY were to be evicted from pier 7, said eviction would, according to AWNY, negatively impact the local area economy because it would force AWNY to shut down its operations and lay off its employees. Equally, if not more compelling than New York’s interest in the uniform administration of its laws is its interest in maintaining a strong state economy and keeping its residents off the unemployment line. Thus, the instant holdover proceeding is an inherently local one that should be resolved by this court, not a federal court, pursuant to this state’s laws, not federal maritime law.
Also without merit are AWNY’s contentions that the FMC has jurisdiction over this holdover proceeding and that the proceeding should be stayed pursuant to the doctrine of primary jurisdiction. The statutory function of the FMC is to regulate “common carriers by water and other persons involved in the oceanborne foreign commerce of the United States under provisions of the Shipping Act of 1984” (46 CFR 501.2 [a]). The Shipping Act was enacted to (1) establish a nondiscriminatory regulatory process for the carriage of goods by water; (2) provide an efficient and economic transportation system in the ocean commerce of the United States that is in harmony with, and responsive to, international shipping practices; (3) encourage development of an economically sound and efficient United States-flag liner fleet capable of meeting national security needs; and (4) promote the growth and development of United States exports through competitive and efficient ocean transportation and by placing a greater reliance on the marketplace (46 USC Appendix § 1701). To these ends, the Shipping Act provides that *522 no marine terminal operator[3] may “unreasonably refuse to deal or negotiate” (46 USC Appendix § 1709 [b] [10]; [d] [3]) or “give any undue or unreasonable preference or advantage or impose any undue or unreasonable prejudice or disadvantage with respect to any person” (46 USC Appendix § 1709 [d] [4]). The EMC is empowered to direct the payment of reparations to a complainant for actual injury caused by a violation of the Act (46 USC Appendix § 1710). The Act further states that it applies to agreements among marine terminal operators to “discuss, fix, or regulate rates or other conditions of service” (46 USC Appendix § 1703 [b] [1]) and to “engage in exclusive, preferential, or cooperative working arrangements, to the extent that such agreements involve ocean transportation in the foreign commerce of the United States” (46 USC Appendix § 1703 [b] [2]). What is most critical to this analysis though is what the Shipping Act does not state. Nowhere does the Act state that it governs or applies to commercial holdover proceedings between marine terminal operators.
The doctrine of primary jurisdiction provides that “[w]here the courts and an administrative agency have concurrent jurisdiction over a dispute involving issues ‘beyond the conventional experience of judges,’ . . . the court will ‘stay its hand until the agency has applied its expertise to the salient questions’ ” (Flacke v Onondaga Landfill Sys., 69 NY2d 355, 362 [1987], quoting Engelhardt v Consolidated Rail Corp., 756 F2d 1368, 1369 [2d Cir 1985]). However, “[w]here the technical expertise and special discretion of the [EMC] are not otherwise required, a court is competent to make a determination of a nontechnical nature based on an uncomplicated set of facts” and the doctrine of primary jurisdiction is rendered inapplicable (Triomphe Disc Corp. v Chilean Line, 93 AD2d 228, 231 [1st Dept 1983]). Commercial holdover-proceedings like the one at bar are resolved in Part 52 of this court on a daily basis and are well within the conventional experience of the judges of the Civil Court. On the other hand, nothing in the statutory language of the Shipping Act indicates that the EMC has any experience, let alone expertise, over the salient question of the Port Authority’s *523 entitlement to a judgment of possession of the northern half of pier 7. Moreover, while the EMC may very well have jurisdiction over AWNY’s claim that the Port Authority violated the Shipping Act by engaging in discriminatory negotiations, there is nothing in the Act, or the case law interpreting it, which supports AWNY’s claim that such jurisdiction confers upon the EMC exclusive jurisdiction over all disputes arising out of the lease. Thus, the doctrine of primary jurisdiction is inapplicable to this proceeding.
AWNY’s claim that the proceeding should be stayed because the elements required for the issuance of a Yellowstone injunction have been satisfied is irrelevant for two reasons. First, “[t]he function of reply papers is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of, or new grounds for the motion” (Matter of TIG Ins. Co. v Pellegrini, 258 AD2d 658, 658 [2d Dept 1999]). AWNY’s Yellowstone theory is a new argument in support of its cross motion to stay, and, as such, was improperly raised for the first time in AWNY’s reply. Second, and more importantly, the Civil Court of the City of New York does not have the jurisdiction to grant such injunctive relief (see Lew-Mark Cleaners Corp. v DeMartini, 128 AD2d 758, 758-759 [2d Dept 1987]; CCA 209 [b] [stating that no injunction shall issue from the Civil Court except pursuant to specified statutes]).
Notwithstanding the foregoing, the court is concerned that the failure to stay the instant holdover proceeding could result in “inconsistent adjudications, duplication of proof, and the potential waste of judicial resources” (El Greco Inc. v Cohn, 139 AD2d 615, 617 [2d Dept 1988]). In the “wherefore” clause of its verified complaint before the EMC, AWNY demands an order commanding the Port Authority to, inter alia, (1) cease all actions to terminate AWNY’s leasehold relationship with the Port Authority; (2) recommence discussions with AWNY in good faith for a long-term extension of the lease; and (3) to pay AWNY by way of reparation an amount exceeding $15,000,000. The Port Authority, however, has not challenged either the FMC’s jurisdiction to resolve the Shipping Act violations alleged by AWNY, or its jurisdiction to award the relief demanded by AWNY. Thus, if the instant action is not stayed, it is not difficult to foresee a scenario in which AWNY is evicted from its occupancy of pier 7 by an order of this court, and the Port Authority is directed to recommence good faith discussions for a renewal of AWNY’s *524 lease by an order of the FMC. This is an inconsistent result the court must strive to avoid. Moreover, the claims to be resolved by this court and the FMC, though not identical, are so inextricably intertwined that a decision by the FMC ordering the Port Authority to recommence good faith negotiations with AWNY for a renewal of the pier 7 lease would effectively dispose of the issues presently before this court. Further, AWNY’s eviction is likely to have consequences that extend far beyond the gates of pier 7; consequences that could negatively impact not only AWNY’s business and employees, but the foreign commerce of break bulk cocoa, domestic chocolate manufacturers, and consumers as well. Prudence, then, requires that this court, in the exercise of its discretion, stay the proceeding before it and allow the FMC to reach a meaningful determination on the merits. Therefore, because this holdover proceeding and the action before the FMC share a complete identity of parties, and because the issues to be resolved in both actions directly overlap, the court, in the interests of comity, orderly procedure and justice, finds that AWNY has presented a proper case for a stay of the instant holdover proceeding.
Accordingly, it is hereby ordered that the Port Authority’s motion to restore the instant commercial holdover proceeding to the calendar is granted; and it is further ordered that AWNY’s cross motion to stay is granted to the extent that the instant holdover proceeding is stayed pending a determination by the FMC.

. The conceptual approach to ascertaining a contract’s maritime nature developed out of the Supreme Court’s recognition that its decisions do not draw clean lines between maritime and nonmaritime contracts and that, unlike torts, the boundaries of admiralty jurisdiction over contracts, being conceptual rather than spatial, are difficult to draw.

. The court will assume, for the purposes of this motion, that AWNY had a lease to occupy the northern half of pier 7.

. The Shipping Act defines a marine terminal operator as “a person engaged in the United States in the business of furnishing wharfage, dock, warehouse, or other terminal facilities in connection with a common carrier, or in connection with a common carrier and a water carrier subject to subchapter II of chapter 135 of Title 49, United States Code” (46 USC Appendix § 1702 [14]). The court will assume, for the purposes of this motion, that both AWNY and the Port Authority satisfy this statutory definition.